**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Mark YOUNG, Defendant–Appellant.**

**No. 92–1431.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 10, 1992.

Decided June 24, 1993.

---

Donna Eide (argued), Office of U.S. Atty., Indianapolis, IN, for plaintiff-appellee.

Thomas M. Dawson (argued), Leavenworth, KS, for defendant-appellant.

Before FLAUM and RIPPLE, Circuit Judges, and SHADUR, District Court Judge.*

RIPPLE, Circuit Judge.

Mark Young was charged in an indictment with conspiracy to knowingly and intentionally manufacture and distribute marijuana in a quantity in excess of 1,000 plants in violation of 21 U.S.C. §§ 841 and 846. He was also charged with possession with intent to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1). After a jury trial in September 1991, he was found guilty of both charges. Pursuant to the mandatory provisions of 21 U.S.C. § 841(b)(1)(A), the district court sentenced him to life imprisonment without release on the basis of the conspiracy conviction. A concurrent sentence of 405 months was imposed for the substantive offense. For the reasons set forth in the following opinion, we affirm the judgment with respect to the jury verdict. We reverse and remand, however, for a new sentencing hearing.

## I

### FACTS

In October 1988, Claude Atkinson and Ernest Montgomery became partners in a scheme to grow, cultivate, and sell marijuana. Their plan involved buying a farm on which to grow the marijuana, incorporating the farm as a legitimate business operation, hiring others to operate the farm and to cultivate the marijuana, and finding buyers to purchase the marijuana. In the spring of 1989, Atkinson and Montgomery began growing marijuana plant seedlings at a cabin owned by Montgomery while they were looking for a farm to purchase. According to the presentence report, a total of 12,500 seedlings were produced at the cabin, and all were eventually planted in the summer of 1989 on a farm that had been purchased in June of that year. During the spring and summer of 1989, Atkinson and Montgomery recruited several others to aid in the planting, harvesting, and packaging of the resulting crop.

In October 1989, while the marijuana was being prepared for sale, Montgomery learned that Mark Young, the appellant, could find buyers for the marijuana. Shortly afterward, Atkinson and Montgomery travelled to Mr. Young's home in Indianapolis. At this initial meeting, they discussed Mr. Young's finding buyers for the marijuana they had grown, the price of the marijuana, the quantity of marijuana that would be available, and

* The Honorable Milton I. Shadur, Senior District Judge for the United States District Court for the Northern District of Illinois, is sitting by designation.

Mr. Young's commission for finding the buyers. The men agreed that Mr. Young would get $100 per pound sold and that approximately 600 to 700 pounds would be available for sale.

A few days after this initial meeting, Mr. Young located two Florida buyers who then travelled to Mr. Young's home to discuss the terms of the sale with Atkinson and Montgomery. The Floridians were informed that approximately 100 pounds a week would be available for sale at $12,000.00 per pound. A week after this meeting, the Floridians located two New York buyers, who began purchasing 100 pounds a week for a total of seven to eight weeks. The New Yorkers travelled to Indiana, dropped off the money at one location where it was counted, and then examined the marijuana at another location. With the exception of the first transaction, Mark Young was never present when the sale took place. He collected his commission at the location of the sale after the sale had been completed. On one occasion, Mr. Young passed on to Cindy Montgomery, through a third party, the description of a prospective purchaser. This description enabled Cindy Montgomery, a co-conspirator, to recognize the man when she picked him up at the airport.

As a result of these transactions, Mr. Young received between $60,000 and $70,000 in commissions.[1] The record also reflects that an additional 200 pounds of marijuana were sold to five individuals without the knowledge or assistance of Mr. Young. Thus, the total amount sold by the conspiracy was approximately 900 pounds.

## II

## ANALYSIS

Mr. Young raises only one issue that deals with the merits phase of his trial. He then turns to several issues dealing with the sentence determination. We shall first address the question concerning the merits and then the sentencing issues.

### A.

Mr. Young argues that it was error to give one of the jury instructions. Instruction 37 reads:

> I instruct you that it is within the proper and lawful performance of duty for the office of the United States Attorney to enter into plea bargaining with individuals relating to their alleged involvement in criminal activity and whether or not reduced sentences ought to be recommended against a particular individual in exchange for that person's cooperation in the government's investigation. You should draw no inferences based only on such an exercise of this discretion by the United States Attorney.
>
> One who has entered into a plea agreement does not thereby become incompetent as a witness. However, the jury should keep in mind that such testimony is always to be received with caution and weighed with great care.

Tr. IV at 212.

During the trial, Mr. Young objected to the sentence "You should draw no inferences based on such exercise of this discretion by the United States Attorney." His counsel contended that this sentence tended to negate the possibility that those witnesses testifying pursuant to a plea agreement may have testified untruthfully. On appeal, Mr. Young argues that the language cautioning the jury about the potential untruthfulness of the accomplices' testimony should have been expanded. He also argues that the "laudatory" language contained in paragraph one of Instruction 37 should have been eliminated. In responding to Mr. Young's argument, the government first contends that Mr. Young waived this issue because he failed to make these specific objections to Instruction 37 during the trial. Second, even if the issue were properly preserved for appeal, the government notes that Mr. Young has cited no persuasive authority to support his argument that Instruction 37 constituted reversible error.

---

1. For his efforts in the conspiracy, Atkinson received between $200,000 and $300,000 in profits. Other members of the conspiracy received $100,000, $40,000, $22,000, and $5,000 to $6,000.

■ Rule 30 of the Federal Rules of Criminal Procedure requires a defendant to make specific objections to a judge's refusal to give a tendered instruction.[2] *United States v. Canino,* 949 F.2d 928, 940 (7th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1940, 118 L.Ed.2d 546 (1992); *United States v. Roth,* 860 F.2d 1382, 1390 (7th Cir.1988), *cert. denied,* 490 U.S. 1080, 109 S.Ct. 2099, 104 L.Ed.2d 661 (1989); *United States v. Jackson,* 569 F.2d 1003, 1009–10 (7th Cir.), *cert. denied,* 437 U.S. 907, 98 S.Ct. 3096, 57 L.Ed.2d 1137 (1978). The reason for this requirement is that a specific objection, timely made during trial, gives the trial court an opportunity to correct any problems and avert error. *Roth,* 860 F.2d at 1390; *United States v. Kehm,* 799 F.2d 354, 362–63 (7th Cir.1986); *United States v. Markowski,* 772 F.2d 358, 362–63 (7th Cir.1985), *cert. denied,* 475 U.S. 1018, 106 S.Ct. 1202, 89 L.Ed.2d 316 (1986). It is indeed a close question as to whether Mr. Young has preserved adequately all the arguments he now makes before us. Our review of the record, however, reveals that the instruction conference was conducted in a rather unstructured and informal manner. Therefore, in order to ensure that Mr. Young's rights are fully protected, we shall address the merits.

■ In reviewing the giving of an instruction for reversible error, we must evaluate the instructions not in isolation but taken as a whole. *United States v. Marshall,* 985 F.2d 901, 907 (7th Cir.1993) (citing *United States v. Durades,* 929 F.2d 1160, 1167 (7th Cir.1991)), *cert. denied,* — U.S. —, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993). " 'As long as the instructions treat the issue fairly and adequately, they will not be interfered with on appeal.' " *United States v. Sims,* 895 F.2d 326, 329 (7th Cir.1990) (quoting *United States v. Machi,* 811 F.2d 991, 1005 (7th Cir.1987)); *accord United States v. Hoffman,* 957 F.2d 296 (7th Cir.1992), *cert. denied,* — U.S. —, 112 S.Ct. 2315, 119 L.Ed.2d 235 (1992). The district court has significant latitude in choosing the exact wording of an instruction, and may reject proffered instruc-

tions where the court's instructions cover the essential points. *Durades,* 929 F.2d at 1167; *United States v. Xheka,* 704 F.2d 974, 987 (7th Cir.), *cert. denied,* 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983).

■ Applying these principles to the present case, we conclude that giving Instruction 37, while certainly not always necessary, was within the discretion of the district court and was not reversible error. The district court stated succinctly that the sole purpose of the instruction was to inform the jurors that it is perfectly appropriate for the United States Attorney to enter into plea agreements, and that the jurors should draw no inferences from the exercise of this discretion. We perceive nothing "laudatory" about this instruction, especially because the next sentence of the instruction warned the jury that testimony given pursuant to a plea agreement should be considered with caution and great care. We also note that the accomplice witnesses were examined and cross-examined extensively about their plea agreements and their possible motives to testify falsely. *See United States v. Braxton,* 877 F.2d 556, 565 (7th Cir.1989) (cross-examination of accomplice as to motive for testifying can substitute for cautionary instruction on accomplice testimony); *United States v. McCabe,* 720 F.2d 951, 957 (7th Cir.1983) (same).

### B.

#### 1.

■ Mr. Young's first challenge to his sentence places in issue the constitutionality of the sentencing scheme of 21 U.S.C. § 841(b). First, Mr. Young asserts that the scheme is arbitrary and irrational because it rests upon the unfounded presumption that one marijuana plant produces one kilogram of marijuana. Second, he maintains that the sentencing scheme is not rationally related to the goal Congress sought to achieve by enacting § 841(b). Lastly, Mr. Young argues that § 841(b) is unconstitutional because a prose-

2. In part, Federal Rule of Criminal Procedure 30 states:
No party may assign as error any portion of the charge ... unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection.

cutor can more than double a sentence by choosing to charge a defendant with growing plants rather than with possession of the actual fruit of the plants. He points out that, if he had been prosecuted on the basis of the actual weight of the marijuana rather than the number of plants, he would have received a much lower sentence. Relying on the reasoning in *United States v. Murphy*, 786 F.Supp. 1105, 1107 (D.Conn.1992) (now vacated by *United States v. Murphy*, 979 F.2d 287 (2d Cir.1992)), Mr. Young asks this court to declare the sentencing scheme of 21 U.S.C. § 841(b) unconstitutional.

■ We review a question of law *de novo. United States v. Boula*, 932 F.2d 651, 655 (7th Cir.1991). Mr. Young's first two arguments are precluded by our decisions in *United States v. Webb*, 945 F.2d 967 (7th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1228, 117 L.Ed.2d 463 (1992), and *United States v. Haynes*, 969 F.2d 569 (7th Cir. 1992). We stated in *Webb:*

> Believing "that the federal government's most intense focus ought to be on major traffickers" in illegal drugs, Congress, "after consulting with a number of DEA agents and prosecutors about the distribution patterns for these various drugs ... selected quantities of drugs which if possessed by an individual would likely be indicative of operating at such a high level." H.R.Rep. No. 845, 99th Cong., 2d Sess., 11–12 (1986).

*Webb*, 945 F.2d at 968 (quoting *United States v. Rose*, 881 F.2d 386, 389 (7th Cir.1989)). More recently, this court has stated:

> The equivalency provision is certainly not based upon a determination that one marijuana plant yields one kilogram of consumable product, for the actual yield is nowhere near that high.... Rather, it reflects Congress' judgment that an individual who grows 150 plants is just as culpable as one who has distributed 150 kilograms of marijuana.

*Haynes*, 969 F.2d at 571. The reasoning in *Webb* and *Haynes* establishes that, by choosing the fiftieth plant as the cut-off, Congress determined that growing marijuana on such a scale was evidence of greater culpability because it demonstrates that an individual is a high-level participant in the marketplace. *Haynes*, 969 F.2d at 572; *Webb*, 945 F.2d at 969. In choosing to punish more severely those involved in creating the supply, Congress simply has "taken a supply-side approach to our nation's marijuana problem." *Haynes*, 969 F.2d at 573. Therefore, Mr. Young's first and second arguments must fail.

■ Mr. Young's third objection—that a prosecutor can double a sentence by charging a defendant with growing a certain number of plants—is precluded by the reasoning in *Haynes*. In *Haynes*, we held that, when a drug operation is halted after the marijuana plants have been reduced to a measurable weight of marijuana, the prosecutor may properly use the number of plants, not the weight of their fruits, in charging an offender. *Haynes*, 969 F.2d at 572. This result was justified by the clear language of the Sentencing Guidelines, which states that the actual number of plants shall be used "in the case of an offense *involving* ... 50 or more marijuana plants." U.S.S.G. § 2D1.1(c) (emphasis added). Because Haynes was the grower and harvester of marijuana plants, his offense necessarily "involved" fifty or more marijuana plants, making the prosecutor's focus on the number of plants correct. Likewise, the clear language of 21 U.S.C. § 841(b)(1)(A)(vii) imposes a sentence for a violation involving 1,000 or more marijuana plants, regardless of weight. Mr. Young was found guilty of conspiracy to manufacture and to distribute marijuana that involved an amount of marijuana in excess of 1,000 plants. Although Mr. Young did not personally engage in growing the marijuana, he was a member of a conspiracy that did engage in growing it. Therefore, Mr. Young's offense, like Haynes', necessarily "involved" 1,000 marijuana plants. The prosecutor's reliance on the number of plants was appropriate.

### 2.

■ Mr. Young next submits that, in determining the number of plants for which he could be held responsible at sentencing, the district court was obliged to determine, as a threshold matter, the number of plants that he could have reasonably foreseen as part of

the conspiracy. In short, Mr. Young contends that this court's holding in *United States v. Edwards*, 945 F.2d 1387 (7th Cir. 1991), *cert. denied sub nom. Martin v. United States*, — U.S. —, 112 S.Ct. 1590, 118 L.Ed.2d 308 (1992), is applicable. In *Edwards*, we held that, under the Sentencing Guidelines, a district court ought to calculate the base offense level according to the quantity of drugs that the defendant could reasonably have foreseen to be part of the conspiracy. *Id.* at 1391; *see* U.S.S.G. § 1B1.3, Application Note (Nov.1989). We noted that, in making this assessment, "the district judge may be guided by conspiracy law in considering which conduct is relevant for sentencing purposes." *Edwards*, 945 F.2d at 1392. We further noted that, because the standards embodied in the Guidelines roughly approximate those detailed by the Supreme Court in *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), the analysis of that case would be helpful in determining the applicable conduct. *Edwards*, 945 F.2d at 1392. Under *Pinkerton*, a defendant is responsible for the acts of his co-conspirators if those acts were: 1) reasonably foreseeable to the defendant and 2) were in furtherance of the conspiracy. *Pinkerton*, 328 U.S. at 647–48, 66 S.Ct. at 1184–85. In *Edwards*, we emphasized that, in applying the *Pinkerton* analysis

> conduct of co-conspirators—even past conduct—can be considered "reasonably foreseeable" to a particular defendant if that defendant has demonstrated a substantial degree of commitment to the conspiracy's objectives, either through his words or his conduct. Of particular importance in determining the level of commitment on the part of an individual defendant is the scope of the agreement between that defendant and his co-conspirators.

945 F.2d at 1393–94.

This case requires that we decide whether the analysis of *Edwards*, fashioned in the context of the Sentencing Guidelines, is also applicable to cases in which the sentence is governed not by the Guidelines but by the statutory mandate. This circuit has not had the occasion to confront this issue. However, two other circuits have ruled on the matter.

In both instances, the court determined that the foreseeability analysis employed in the Guidelines context is also applicable in the statutory context. *See United States v. Martinez*, 987 F.2d 920, 923–26 (2d Cir.1993); *United States v. Rogers*, 982 F.2d 1241, 1246 (8th Cir.1993) (citing *Jones*), *cert. denied*, — U.S. —, 113 S.Ct. 3017, 125 L.Ed.2d 706 (1993); *United States v. Jones*, 965 F.2d 1507, 1517 (8th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 346, 121 L.Ed.2d 261 (1992). Judge Altimari's discussion of the issue in his opinion for the Second Circuit in *Martinez* is especially instructive. Surveying the legislative history of the current statutes, he noted that there is no indication that Congress intended to abandon the theory of conspiratorial liability that has descended from *Pinkerton*. *See Martinez*, 987 F.2d at 925. He also noted that it would indeed be difficult to assume that Congress intended to employ under the statute a sentencing scheme that is so completely at odds with the measured approach clearly required by the Guidelines.

■ We are unable to discern any reason to depart from the reasoned approach of our colleagues in the other circuits. The view they have taken preserves the traditional approach to co-conspirator liability, an approach well-established in our criminal law. It also permits the administration of the statute in a way that does no violence to the approach of the Sentencing Guidelines. Accordingly, we join the other circuits that have confronted the issue in holding that, in imposing a sentence for conspiracy under the mandatory provisions of section 841(b), the district court must determine the quantity of drugs that the defendant could reasonably have foreseen.

### 3.

We have concluded that Mr. Young can be held accountable only for the amount of marijuana that he could reasonably have foreseen as part of the conspiracy. Accordingly, we must now decide whether the district court's determination that he could reasonably have

foreseen that the conspiracy involved 12,500 plants can be sustained on this record.[3]

At the outset, we turn to our decision in *Edwards* for guidance. In explaining the concepts of foreseeability in *Edwards,* we emphasized, at several points in the opinion, that the

> conduct of co-conspirators—even past conduct—can be considered "reasonably foreseeable" to a particular defendant if that defendant has demonstrated a substantial degree of commitment to the conspiracy's objectives, either through his words or his conduct. Of particular importance in determining the level of commitment on the part of an individual defendant is the scope of the agreement between the defendant and his co-conspirators.

*Edwards,* 945 F.2d at 1393–94. It is also important to note that, in *Edwards,* we emphasized that the foreseeability inquiry requires that the district court pay special attention to the precision with which the reasons for its determination are stated. We made clear that boilerplate explanations will not suffice and held that district courts should set forth the "reasons why the particular amount of the drugs was reasonably foreseeable ... with reference to the evidence before the court." *Id.* at 1399. We recently reiterated the importance of providing individualized determinations of reasonable foreseeability. In *United States v. Goines,* 988 F.2d 750 (7th Cir.1993), we stated that "[t]he sentencing judge should state reasons why each individual defendant was aware of or reasonably foresaw the particular amount of drugs for which he will be held accountable, with reference to supportive evidence." *Id.* at 775 (citing *Edwards,* 945 F.2d at 1399). Because the district court had failed to set forth specific factual findings regarding each defendants' reasonable awareness of the quantity of drugs involved in the conspiracy, this court vacated and remanded four of the *Goines* conspirators' sentences. *Id.* at 777. We have further recommended that district courts, when confronted with difficult factual issues at sentencing, consider the use of sentencing memoranda. *Edwards,* 945 F.2d at 1399 n. 2.

■ We now turn to the record to determine if, when measured against the foregoing criteria, the determination of the district court can be sustained. Of course, on matters of factual determinations, our review must be deferential. On the other hand, deferential review is not the equivalent of no review at all. The presentence investigation report recited that, in the spring of 1989, the co-conspirators, Montgomery and Atkinson, brought 12,500 seedling marijuana plants that had been started at another location to a farm in Logan County, Indiana. The seedlings were replanted at that location and cultivated to become the cash crop at issue here. The presentence report further noted that Mr. Young had his first meeting with the co-conspirators in October of the same year. In determining that the defendant ought to be held responsible for the entire number of plants, despite the fact that he was not part of the conspiracy at the time the plants were brought to the farm, the district court grounded its determination on the following points:

1. The defendant joined the conspiracy while the marijuana was being prepared and when the whole quantity was not known. Tr. Sentencing at 28.

2. The defendant undertook the role of primary distributor and undertook the responsibility "to get rid of whatever marijuana was produced from this operation, because he was the distributor." *Id.* at 29. He "knew that they were producing marijuana and that his obligation was to sell what they were producing." *Id.*

3. The defendant was to receive for this service "a rather substantial commission," a commission that "reflects his major role in the conspiracy." *Id.*

---

3. Acting before the rulings of the other circuits on the foreseeability issue and without any definitive guidance from this court, the district court held that sentencing under the mandatory minimum provisions of the statute, as opposed to the Guidelines, does not require an inquiry into whether the amount of drugs was foreseeable to the defendant. Nevertheless, recognizing that the issue was an open one, the district court also proceeded to conduct the foreseeability inquiry in the alternative.

4. The amount that the co-conspirators were prepared to deliver every week indicates an ongoing operation. *Id.* The district court then addressed specifically the fact that the defendant actually brokered only "one batch of marijuana" that weighed approximately 700 pounds and stated emphatically that limiting Mr. Young's participation in the conspiracy to that amount "understates his involvement in the conspiracy, and certainly understates the scope of his agreement." *Id.* at 30.

These findings cannot be termed boilerplate and, at first glance, would appear to come close to satisfying, albeit imperfectly, the standards set forth explicitly in *Edwards*. However, that case also makes clear that the findings articulated by the district court must find support in "the evidence before the court." *Edwards*, 945 F.2d at 1399. It is at this point that we encounter great difficulty in sustaining the disposition of the district court. Neither the district court nor the parties in their submissions to us indicate how the record supports the inference, central to the district court's determination, that Mr. Young had any reason to know that the conspiracy involved more than the amount of marijuana he actually brokered. Indeed, as far as we can tell from the record, Mr. Young was advised by co-conspirator Atkinson that the project expected to produce about the amount that was actually brokered:

Q. Did you tell him how many pounds you would provide for sale?

A. We didn't make any definitive contract, but we told him that we were in the area of six to seven hundred pounds.

Tr. II at 166. While a subsequent conversation did inform Mr. Young that the production rate would be 100 pounds a week, nothing was said about the duration of production. Moreover, there is no indication in the record that the district court elected to dis-count any of this testimony and, indeed, there is an affirmative indication that this testimony was central to its determination.[4]

Accordingly, we believe that the appropriate course is to return this case to the district court for redetermination of the sentence. In addition to the ambiguity in the law regarding sentencing under the mandatory minimum statute, which we have noted earlier, the district court had to contend with the fact that Mr. Young was tried with one of the principals in this operation and, especially in the development of details, the record focuses more on Mr. Montgomery's activities than on those of Mr. Young. Accordingly, the district court may determine that it is necessary to take additional evidence with respect to the reasonable expectations of Mr. Young. Or it may determine that a more particularized analysis of the facts, preferably memorialized in a form more precise than an oral rendition, is appropriate. We leave the selection of that course to the good judgment of our colleague in the district court.

4.

▮▮▮▮ Finally, Mr. Young challenges the district court's determination that he is subject to an enhancement of his sentence because he was a manager or supervisor. *See* U.S.S.G. § 3B1.1(b). The district court's findings on this point explicitly incorporated by reference the court's earlier analysis with respect to the amount of contraband reasonably foreseeable to the defendant. Therefore, this matter must necessarily be revisited by the district court in the course of resentencing. In the interest of judicial economy, however, we note that the district court's findings about the defendant's participation in the decisions of Atkinson and Montgomery with respect to price and location of the transactions seem to suffer from

---

4. Thus, this situation is different from that in *United States v. Mojica*, 984 F.2d 1426, 1445, 1447 (7th Cir.1993), *cert. denied sub nom. Castaneda v. United States*, — U.S. —, 113 S.Ct. 2433, 124 L.Ed.2d 653 (1993). In *Mojica*, although we stated that the district court had offered a relatively generic explanation for assigning a drug amount to two of the defendant-conspirators, we upheld the court's sentencing determination because the defendants could identify no evidence in support of their claim that the district court had erred in finding the amount reasonably foreseeable to them. 984 F.2d at 1444, 1445. In contrast, Mr. Young has provided support for his claim that he could not have reasonably foreseen the amounts of marijuana involved in the conspiracy. Moreover, as noted in the text, we cannot discern any satisfactory evidentiary basis for the district court's conclusion.

the same infirmity as those on the foreseeability issue. Moreover, its findings that Mr. Young exercised control over others appear to have, at best, thin record support. On the other hand, it is clear that control over others is not the sine qua non of a finding that a person is a manager or supervisor. *See United States v. Skinner*, 986 F.2d 1091, 1097 (7th Cir.1993). The district court did identify a good deal of evidence of record that supports the conclusion that Mr. Young was quite a bit more than a middleman. He also certainly commanded a significant price for his labors.

A reassessment, supported by reference to the record, is the appropriate course. This matter must be addressed in the first instance by the district court.

### Conclusion

The judgment of the district court is affirmed in part and reversed in part. The case is remanded to the district court for resentencing.

AFFIRMED IN PART; REVERSED and REMANDED IN PART.