134 F.3d 375
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
United States of America, Plaintiff-Appellee,
v.
Robert L. SEAVER, Defendant-Appellant.
 No. 97-1832.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 12, 1997.
Decided Jan. 26, 1998.
 
 Before Hon. JESSE E. ESCHBACH, Hon. JOHN L. COFFEY, Hon. MICHAEL S. KANNE, Circuit Judges.
 
 ORDER
 
 1
 Robert L. Seaver pleaded guilty to Count 1 and Count 19 of a 19 count indictment. Count 1 charged a conspiracy to distribute marijuana in excess of 100 kilograms and aiding and abetting, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. Count 19 charged using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). Counts 2-16 and 18, for possession with intent to distribute marijuana, as well as count 17 for interstate commerce with the intent to facilitate unlawful activity, were dismissed upon a motion by the government. The sentencing court determined that Seaver had an offense level of 23 and a criminal history of category 1, which resulted in an imprisonment range of 46 to 57 months for Count 1. The district court sentenced him at the low end of the guidelines to 46 months' imprisonment on Count 1 after hearing the government's recommendation at sentencing.[1] Seaver was also ordered confined to a mandatory consecutive 60 months' imprisonment on Count 19, for a total of 106 months, and was also required to pay a special assessment of $100. Following his term of imprisonment, he was ordered to serve a term of supervised release of four years on Count 1 and three years on Count 19, to be served concurrently with each other. At sentencing, Seaver argued that the amount of drugs attributed to him was not reasonably foreseeable based upon the information presented to the court and that the calculation of the weight of the marijuana in the Presentence Investigation Report (PSR) was incorrect as well as speculative. The district court disagreed and Seaver appeals. We affirm.
 
 
 2
 Seaver was involved in a drug distribution conspiracy with several other individuals that commenced in at least September 1994, when Robert Holcomb began receiving express mail packages containing marijuana from Laredo. Texas at his family members' addresses in LaPorte, Indiana. On March 10, 1995, postal inspectors in Indianapolis searched an express mail package addressed to Holcomb and, after examining its contents, determined that it contained 23.13 pounds of marijuana. Postal inspectors made a controlled delivery of this package with the assistance of the LaPorte County Sheriff's Department. Following this controlled delivery a search of the residence, pursuant to a warrant, revealed express mail receipts and various other documentation of the delivery of 14 parcels containing marijuana. The combined gross weight of these packages was approximately 396 pounds according to the mail receipts. The investigation revealed that Holcomb and several of his family members had agreed to receive packages containing marijuana and turn them over to Pedro Martinez for distribution. Holcomb admitted to his receipt of drugs and gave his commitment to cooperate in the investigation of the distribution of the drugs that he had received.
 
 
 3
 Martinez would travel to LaPorte to retrieve the drug package from Holcomb and return to Milwaukee, Wisconsin drugs would be distributed. Seaver's role in the conspiracy was to drive Martinez to La Porte so that he could obtain the drugs. On March 12, 1995, Seaver drove Martinez and another individual from Milwaukee to LaPorte in order to pick up a parcel containing drugs from Holcomb. Law enforcement officials conducted surveillance of this meeting and arrested Seaver and Martinez in LaPorte after they met with Holcomb.
 
 
 4
 At the change of plea hearing. Seaver pleaded guilty to the drug conspiracy and weapon counts, and stated that the first time that he gave Martinez a ride to LaPorte to retrieve drugs was in December 1994, some three months after Holcomb began receiving parcels in September 1994, Seaver also testified that in return for driving Martinez to LaPorte he was paid money for gas and allowed to purchase marijuana at a reduced rate. He also asserted that he only drove Martinez to LaPorte five or six times. Seaver argues that he should only be accountable for five or six drugs packages based on his assumption that only one parcel of drugs was picked up on each trip. The government disputes this contention and states that it is possible that all 14 parcels were picked up during the five or six times that Seaver admits he drove to LaPorte. Even though the record does not set forth whether Martinez went to LaPorte to pick up marijuana more than five or six times, "Martinez ... proffered information to the government that Robert Seaver was the driver for each of the trips in which they came to LaPorte to pick up marijuana." (PSR, Government's Response to Defendant's Objections, at 20 (emphasis in original).) Further the government stated in its response to Seaver's objections to the PSR that the "cooperating individuals who would have testified at trial have advised that they saw the 'blue van'--which was identical to that driven by Seaver on the final trip which lead to the arrest of both [Seaver and Martinez]--each time Martinez came to LaPorte to pick up marijuana ." (Id.) Seaver acknowledged that he knew that Martinez was going to distribute the drugs and that he drove Martinez with the intent to help him get the drugs for distribution, but argues that he was unaware of the size of the packages until they picked up the packages in LaPorte.
 
 
 5
 In the PSR, the probation officer calculated the amount of drugs involved in the conspiracy for sentencing purposes based upon the gross weight of the 14 mail packages and the ratio of marijuana to the total weight of the package that had been intercepted. As the seized parcel had a total weight of 37 pounds and contained 23.13 pounds of marijuana, the Probation Office determined that 63% of the parcel's total weight was marijuana. Accordingly, the investigating officer estimated that the 14 parcels contained 249 pounds, or 113 kilograms, of marijuana (63% of 396 is 249). The probation officer also added an additional 30 pounds of marijuana to this amount because the United States Postal Inspectors advised that they had information to believe that on March 10, 1995, there was a United Parcel delivery containing 30 pounds of marijuana relating to this drug conspiracy, which was believed to have been stolen prior to distribution. This resulted in the attribution of 279 pounds, or 126 kilograms, of marijuana to Seaver. The attribution of 126 kilograms of marijuana to Seaver resulted in a base offense level of 26,[2] which was reduced by 3 levels for acceptance of responsibility, resulting in a final offense level of 23.
 
 
 6
 Seaver objected to the amount of drugs the sentencing court attributed to him and argued that he should only be held accountable for 115.65 pounds, or 52 kilograms, of marijuana.[3] Seaver asserted that based on this amount of drugs his total offense level should have been 17. This would have resulted in a sentence of 24 months rather than the 46 months he received, assuming that he would be sentenced at the low end of the guideline. However, the district court agreed with the government's and the PSR's calculation of the quantity of drugs attributable to Seaver. On appeal Seaver argues that the full amount of drugs was not reasonably foreseeable to him, that the sentencing court failed to adequately state its reasoning concerning reasonable foreseeability, and that the calculation of the amount of drugs lacked sufficient indicia of reliability.
 
 I. Reasonable Foreseeability
 
 7
 This court reviews the district court's factual determination of the amount of drugs attributable to a defendant for clear error. United States v. Magana, 118 F.3d 1173, 1205 (7th Cir.1997). This court should not conclude that a finding of fact is clearly erroneous "unless upon review it is left 'with a definite and firm conviction that a mistake has been committed." ' United States v. Herrera, 54 F.3d 348, 356 (7th Cir.) (quoting United States v. Herrera, 878 F.2d 997, 1000 (7th Cir.1989)), cert. denied sub nom Crespo v. United States, 516 U.S. 871, 116 S.Ct. 192, 133 L.Ed.2d 128 (1995). " '[I]f two permissible views exist, the fact-finder's choice between them cannot be clearly erroneous." ' United States v. Taylor, 72 F.3d 533, 546 (7th Cir.1995) (quoting United States v. McDonald, 22 F.3d 139, 144 (7th Cir.1994)). At sentencing, the government must establish by a preponderance of the evidence the quantity of drugs that was reasonably foreseeable to an individual defendant. United States v. Edwards, 115 F.3d 1322, 1326 (7th Cir.1997).
 
 
 8
 Seaver argues that the sentencing court erred in determining that the entire amount of marijuana involved in the conspiracy was reasonably foreseeable to him because he played only a limited role in the conspiracy. To support this position, he asserts that his involvement did not begin until December 1994, that he was unaware of the quantity of drugs involved, and that he was only involved in five or six trips. The government responds by stating that even if Seaver only made five trips it is possible that he was still involved in transporting all the drugs because several parcels could have been retrieved each trip. The government asserts that this proposition is consistent with Martinez's statement that Seaver drove him each time. Alternatively, the government argues that the full amount of marijuana is attributable to Seaver even if he did not drive each time drug parcels were picked up because, pursuant to U.S.S.G. § 1B1.3(a)(1)(B), the other trips would be relevant conduct that should be included in the calculation of his base offense level.
 
 
 9
 Relevant conduct includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1). In order for conduct to be relevant it must both be in furtherance of the conspiracy and reasonably foreseeable to the defendant. U.S.S.G. § 1B1.3, comment (n.2), see United States v. Lewis, 110 F.3d 417, 423 (7th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 149, 139 L.Ed.2d 95 (1997). The retrieval of each of the drug packages was obviously in furtherance of the conspiracy, therefore we are left to determine whether the amount of drugs was reasonably foreseeable to Seaver.
 
 
 10
 Conduct of co-conspirators can be considered 'reasonably foreseeable' to a particular defendant so long as that defendant has demonstrated a "substantial degree of commitment to the conspiracy's objectives, either through his words or his conduct." Magana, 118 F.3d at 1205 (quoting United States v. Edwards, 945 F.2d 1387, 1393-94 (7th Cir.1991)). In determining the level of commitment of an individual defendant it is particularly important to consider the scope of the agreement between that defendant and his co-conspirators. Id. at 1394.
 
 
 11
 Seaver asserts that he did not have actual knowledge of the amount of drugs that Martinez picked up. However, actual knowledge of the amount of drugs is not required, and the government merely had to prove that the amount was reasonably foreseeable to Seaver. Seaver admitted at his plea hearing that he knew that Martinez was obtaining drugs so that he could distribute them. Therefore, we are convinced that Seaver must have been aware that the amount of marijuana involved was a sufficient amount to distribute to other individuals. The fact that Seaver was allowed to purchase marijuana at a reduced rate also indicated that he was transporting more than a modest amount of drugs. Further, he indirectly admitted that he was aware of the size of the packages when he stated that he "did not know until we got [to LaPorte] ... what size the package was ..." (Pl. Tr. at 53-54.) Seaver admitted at his plea hearing that he intended to help Martinez obtain the drugs so that Martinez would be able to distribute them. Seaver's admission that he intended to help Martinez obtain drugs for distribution, along with his transportation of the drugs on some, if not all occasions, indicates that he was a trusted member of the conspiracy. Additionally, we are of the opinion that there was sufficient evidence for the district court to conclude that Seaver was involved with the conspiracy from its commencement based on Martinez's statement that Seaver was the driver for each of the trips to LaPorte for the purpose of retrieving the packages of marijuana. Accordingly, Seaver demonstrated a "substantial degree of commitment to the conspiracy's objectives" for the district court to determine that any parcels that Martinez, his co-conspirator, may have picked up without him were reasonably foreseeable to Seaver. Magana, 118 F.3d at 1205. Thus, we conclude that the district court did not clearly err in determining that the entire amount of drugs involved in the conspiracy was reasonably foreseeable to Seaver.
 
 
 12
 II. Sentencing Court's Statement Explaining Finding of Reasonable Foreseeability
 
 
 13
 This court has repeatedly "emphasized that the foreseeability inquiry requires that the district court pay special attention to the precision with which the reasons for its determination are stated." United States v. Young, 997 F.2d 1204, 1211 (7th Cir.1993). Boilerplate explanations from the district court are not sufficient. Id. District courts should set forth the "reasons why the particular amount of the drugs was reasonably foreseeable ... with reference to the evidence before the court." Edwards, 945 F.2d at 1399.
 
 
 14
 Seaver argues that the district court did not adequately set forth its reasoning for finding that more than 100 kilograms of drugs were reasonably foreseeable to him. Although, the district court did not file a sentencing memorandum. It did state that it considered counsels' arguments and reviewed the PSR. Additionally, the sentencing court found that Seaver was involved in the transportation of all of the drugs in this case and that the method used by the government and the Probation Office was the "fairest and most reasonable way to estimate the amount of drugs." Thus, we hold that the district court sufficiently set forth its reasoning for the determination that more than 100 kilograms of drugs were attributable to Seaver.
 
 
 15
 III. Sufficient Indicia of Reliability of Calculation of Drug Quantity
 
 
 16
 Seaver argues that the sentencing court's adoption of the PSR's calculation of the amount of drugs involved in the conspiracy lacked sufficient indicia of reliability. "A defendant ... has a due process right to be sentenced on the basis of reliable information .... 'To succeed on a challenge to a sentence, a defendant must show that information before the court was inaccurate, and that the court relied on it." ' United States v. Campbell, 985 F.2d 341, 348 (7th Cir.1993) (quoting United States v. Musa, 946 F.2d 1297, 1306 (7th Cir.1991)). If the facts in the PSR have sufficient indicia of reliability, a mere denial of the facts by a defendant is insufficient to call into doubt the correctness of the PSR. United States v. Lanterman, 76 F.3d 158, 161 (7th Cir.1996).
 
 
 17
 "[I]t is well established that the evidentiary standards that apply to sentencing are not as stringent as those applicable in a criminal trial." United States v. Taylor, 72 F.3d 533, 543 (7th Cir.1995). Pursuant to 18 U.S.C. § 3661, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." "Provided that the facts contained in a PSR 'bear sufficient indicia of reliability to support their probable accuracy,' the district court may adopt them 'as support for its findings and conclusions' regarding the quantity of drugs attributable to a defendant." Taylor, 72 F.3d at 543 (quoting United States v. Salmas, 62 F.3d 855, 859 (7th Cir.1995)).
 
 
 18
 Seaver argues that the calculation of the amount of marijuana in 14 packages based solely on the interception of only one of those packages was too speculative to be reliable and that there was insufficient evidence to make such an estimation. He cites to United States v. Henderson, 58 F.3d 1145, 1151 (7th Cir.1995), for the proposition that while the inquiry of the sentencing court may not be precise and may result from a rough approximation it may not engage in "nebulous eyeballing," and should be conservative in making its estimation. Seaver also acknowledges that because "drug dealers ordinarily do not use invoices and bills of lading, ... sentencing courts may make reasonable estimates as to drug quantities." United States v. Rodriguez, 67 F.3d 1312, 1325 (7th Cir.1995), cert. denied, 517 U.S. 1174, 116 S.Ct. 1582, 134 L.Ed.2d 679 (1996). However, the government's possession of the 14 mail receipts is strikingly similar to an invoice for the drug conspiracy.
 
 
 19
 The sentencing court was made aware of the exact weight of the drug parcels from the recovered mail receipts, as well as the ratio of drugs to total package weight from the intercepted parcel. In Taylor, this court concluded that the district court did not err when it adopted the drug quantities from the PSR which were based upon witness testimony, but also a calculation of the amount based on estimates of the frequency of drug deliveries and an approximation of the amount of drugs involved in each trip. Taylor, 72 F.3d at 544-45. This court has also previously approved a sentencing court's approximation of drug quantities based upon the size and number of empty drug packages that had cocaine residue in them. United States v. Acevedo, 28 F.3d 686, 689-90 (7th Cir.1994); United States v. Henderson, 58 F.3d 1145, 1152 (7th Cir.1995). Thus, we are convinced that the sentencing court did not engage in "nebulous eyeballing," and Seaver has failed to show that the information that the sentencing court relied on was inaccurate. After considering the totality of the evidence, we are not left with the conviction that an error has been committed and, thus, we conclude that the approximations were based on sufficiently reliable information.
 
 
 20
 The sentencing court did not commit clear error in determining that the full amount of drugs was reasonably foreseeable to Seaver. The court also adequately set forth its reasoning for calculating the quantity of drugs Seaver was held accountable for and made references to the record. Finally, the sentencing court's adoption of the PSR's calculation of the amount of drugs involved in the conspiracy was proper because it had sufficient indicia of reliability.
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 According to 21 U.S.C. § 841(b)(1)(B)(vii) Seaver should have received a mandatory minimum sentence of five years on the drug distribution count, however, pursuant to U.S.S.G. § 5C1.2 and 18 U.S .C. § 3553(f) (safety valve) the court imposed a sentence of 46 months in accordance with the guidelines without regard to the statutory minimum sentence. The court determined that application of the safety valve to Seaver was not precluded even though he pleaded guilty to a gun charge because his guilt was a result of co-conspirator liability
 
 
 [2]
 It is immaterial for sentencing whether the additional 30 pounds of marijuana are included in the amount attributable to Seaver because even without this amount he has a base offense level of 26. U.S.S.G. § 5A (Sentencing Table)
 
 
 [3]
 Seaver's reached this amount in reliance upon his argument that he only made five or six trips to LaPorte and on his assumption that only one parcel was picked up each time. Taking the more conservative estimate of only five trips, Seaver then assumed that 23.13 pounds of marijuana were obtained on each trip, to arrive at a total of 115.65 pounds. Additionally, Seaver mistakenly calculates that 115.65 pounds is equivalent to 59 kilograms when it actuality is only 52.46 kilograms, however this inaccuracy does not alter his base offense level calculation