MEMORANDUM OPINION

ACKER, District Judge.
The convictions of Reginald R. Greathouse, Mary Greathouse, Ronnie Greathouse, Audra Greathouse, Anthony Greathouse, Theresa McFarland, Victor Williams and Barbara Pope for conspiracy to distribute cocaine and crack cocaine in violation of 21 U.S.C. § 841(a)(1) were upheld by the Eleventh Cir­cuit, but the case was remanded for resen-­tencing because at the original sentencing this court followed the then insistence of the United States that all of the drugs involved in the conspiracy be attributed to all of the co-conspirators as in Pinkerton v. U.S., 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), for the purposes of Sentencing Guideline cal­culations. It was not until after the defen­dants appealed to the Eleventh Circuit that the Eleventh Circuit decided U.S. v. Ismond, 993 F.2d 1498 (11th Cir.1993), in which that court held for the first time, as the “guide­lines” continued to evolve:
The court attributed to each of them the total quantity of drugs distributed during the course of the conspiracy. Both con­tend that the attribution to them of this total quantity was erroneous and that the court failed to make findings concerning amounts properly attributable to them.
For sentencing purposes a member of a drug conspiracy is liable for his own acts and the acts of others in furtherance of the activity that the defendant agreed to un­dertake and that are reasonably foresee­able in connection with that activity. U.S.S.G. § lB1.3(a)(l) (Nov.1992); U.S. v. Andrews, 953 F.2d 1312, 1319 (11th Cir.), cert. denied, — U.S. -, -, -, 112 S.Ct. 3007, 3008, 3048, 120 L.Ed.2d 882, 915 (1992). Thus, to determine a defen­dant’s liability for the acts of others, the district court must first make individual­ *1560 ized findings concerning the scope of crimi­nal activity undertaken by a particular de­fendant. U.S.S.G. § 1B1.3, comment, (n. 2.); U.S. v. Edwards, 945 F.2d 1387, 1399 (7th Cir.1991), cert. denied, — U.S. -, 112 S.Ct. 1590, 118 L.Ed.2d 308 (1992). Once the extent of a defendant’s partic­ipation in the conspiracy is established, the court can determine the drug quantities reasonably foreseeable in connection with that level of participation.
993 F.2d at 1499.
As was anticipated by all parties, including this court, after Ismond, the Eleventh Cir­cuit in an unpublished opinion remanded this case for resentencing under the direction of Ismond.
Even more recently than Ismond and the order of remand issued in this ease, the Eleventh Circuit again looked at the attribu­tion problem in U.S. v. Chitty, 15 F.3d 159 (11th Cir.1994), in which that court held:
The government sought at trial, and seeks on appeal, to establish the scope of Chitty’s criminal responsibility and of his sentences for conspiracy by applying Pink­erton v. U.S., 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). It recognizes that the minimum mandatory sentence for 1,000 kilos is only applicable if sufficient of the shipments after June 16,1987 are cumulat-­ed with that shipment to produce a total of more than 1,000 kilos.
⅜ ⅜ ⅝ ⅜ ⅜ ⅜
In this court the government makes sub­stantially the same Pinkerton arguments that it made below and that the PSI ac­cepted as controlling. A conspirator is responsible for conspiracy activities in which he is involved, and for drugs in­volved in those activities, and for subse­quent acts and conduct of co-conspirators, and drugs involved in those acts or con­duct, that are in furtherance of the con­spiracy and are reasonably foreseeable to him. U.S. v. Beasley, 2 F.3d 1551, 1561 (11th Cir.1993); U.S. v. Ismond, 993 F.2d 1498, 1499 (11th Cir.1993). The events after the June 1987 load do not meet these standards. There is no substantial evi­dence that Chitty should have reasonably foreseen additional shipments of marijuana by conspirators. The evidence tells us that the house Chitty rented was used as a stash house for one shipment for one night and that Chitty was present that night and performing what could be found to be look­out or security duty in the vicinity of the house. He was a caretaker, occupying the house for the owner, to look after it and to care for horses and cattle kept at the farm. There is no substantial evidence of who arranged for the use of the house and what representations were made to secure that use. Chitty had a less than intimate friendship with conspirator Gibbs, and he had merely met Nunnally on another occa­sion in another part of Florida. There is no evidence that Chitty knew anything of the conspiracy’s past operations, or the identity of conspirators other than Nunnal­ly and Gibbs, or where the marijuana came from, or how it was imported, or how it was moved from the point of import to the farm, or that future shipments were con­templated and if so by what means, or in what quantities or by whom. At most, the evidence showed Chitty to be a participant in one-shot, transitory storage of a single shipment done by a conspiracy that operat­ed in scattered multiple sites over nearly five years. No subsequent shipment was sent to Chitty’s house nor did any subse­quent flight touch down within many miles, nor did Chitty have any connection with any subsequent shipment.
Therefore', with respect to criminal re­sponsibility, the evidence relating to Counts I and II was sufficient to submit to the jury only because of testimony con­cerning the June load. Evidence of subse­quent events did not meet Pinkerton stan­dards of foreseeability. With respect to sentencing, for the same reasons, applying the Pinkerton standards by analogy, the only marijuana that could be counted was that brought to Compass Lake Hills in June 1987.
This court ordered that briefs be filed by all defendants and by the United States. The court has read these briefs which at­tempt to explain to the court from conflicting perspectives how to discharge its responsibil­ity under Ismond. The court has also con­ducted a sentencing hearing at which the parties offered no additional testimony re­ *1561 specting the amounts of cocaine and crack cocaine to be attributed to the various defen­dants. Therefore, relying entirely on the evidence adduced at trial and the parties’ respective interpretations of that evidence and on the product of conferences between counsel and the Probation Service, this court on March 16, 1994, imposed new sentences after having made oral findings of fact and conclusions; however, this court reserved the right to supplement those findings and con­clusions with a memorandum opinion. This is that opinion.
The court sees no reason to speak further as to the sentences imposed on defendants Mary Greathouse, Theresa McFarland and Barbara Pope, because their new sentences were all for “time served,” and they seem to be happy. Should the United States appeal from any of these three sentences, the cur­rent record will have to speak for itself.
This court supposes that it should feel complimented by an appellate court’s sug­gesting that Judge Acker can figure out the “scope of the criminal activity” undertaken by each defendant in a complex conspiracy, how much cocaine powder and/or crack each of a large number of co-conspirators could “reasonably foresee” when he or she joined the drug conspiracy, and how much of each said drug was thereafter actually involved in the conspiracy. Hypothetically, a person who joins a conspiracy at the last minute before the “bust” and who promises to deliv­er ten kilograms of cocaine the next day but is arrested before he can fulfill his promise, can, in some sense, be said to have “fore­seen” the ten kilos, but the ten kilos could not be attributed to him because it never appeared. It didn’t happen! Just as obvi­ously, a person cannot “foresee” something which occurred in the past, so that a boatload of cocaine delivered to a bunch of sub-con­tracting distributors on the day before a par­ticular defendant joins the conspiracy, and about which he was fully aware, cannot be attributed to him. This is the eminently logical holding of the Fifth Circuit in U.S. v. Carreon, 11 F.3d 1225 (5th Cir.1994). Al­though it may make no sense to ignore this foreknowledge in assessing the degree of cul­pability, it makes perfect grammatical sense that one cannot “foresee” retroactively. Of course, what someone knows about past transactions when he joins a conspiracy may assist the court in the virtually impossible task of determining what he could thereafter foresee.
Happily (if anything about this case is happy), the United States and some of the defendants, with the help of the Probation Service, have reached agreement about how much cocaine is to be attributed to them in setting the base offense level for an applica­tion of the Sentencing Guidelines. In other words, some defendants have conceded the amount of drugs the United States could prove in consideration of the United States’ agreement not to try to prove more than that. U.S.S.G. § 2Dl.l(c). As stated, the only proof offered by the United States upon remand was the evidence presented at the trial itself. The court is not required to give controlling effect to the evidence at trial, and can consider evidence offered during the sen­tencing or resentencing process. U.S. v. Ta­vano, 12 F.3d 301 (1st Cir.1993). In this case, there was no such evidence.
Happily again, none of these defendants have made the impossible more impossible (if that is possible) by taking the position one or more of the conspirators took in U.S. v. Kipp, 10 F.3d 1463 (9th Cir.1993), that the United States in its proof of attribution must distinguish between drugs held for sale and drugs held for personal use. Some of these defendants were undoubtedly snorters, some were smokers, and some didn’t discriminate. Not every “sandwich” made it to the custom­er.
This court starts the balance of its inquiry not only with the lesson of Ismond but with U.S. v. Adams, 1 F.3d 1566 (11th Cir.1993), in which the controlling court, i.e., the Elev­enth Circuit, made clear that the “sentencing court may not speculate on the extent of a defendant’s involvement in a conspiracy; in­stead, such a finding must be supported by a preponderance of the evidence.... There was no evidence that Adams intended to be involved with another flight or that it was foreseeable to him that there would be anoth­er flight.” Id. at 1581.
The Seventh Circuit agrees with the Elev­enth Circuit that it is of “particular impor­tance in determining the foreseeability to *1562 find ‘the scope of the agreement between defendant and his co-conspirators.’ ” U.S. v. Young, 997 F.2d 1204 (7th Cir.1993). Frank­ly, this court has no hesitancy in admitting that it is intellectually incapable of making such a finding in this case. It would either require mindreading or would constitute the wildest of speculation.
There are several reasons in this particular case why the instructions of the Eleventh Circuit are very difficult to follow as to the defendants who have not bargained for the amount of attribution. The first is that this court has not been furnished a satisfactory decoding machine for translating certain of the code words employed by one or more of the defendants to describe the particular drug being discussed on the telephone inter­cepts. This is particularly true when defen­dants in recorded conversations are obviously referring to cocaine in one of its forms, but where there is a marked difference in the sentencing effect as between powder and crack. What is a “sandwich” if it is not something between two slices of bread? The second insurmountable problem, previously mentioned, is how to figure out what the lesser players knew about the scope of a particular conspiracy and which transactions could have been anticipated or foreseen by particular players. If the mere fact that a particular co-defendant knew Reginald Greathouse, the top entrepreneur or “Dad­dy,” and well knew that “Daddy” was heavily involved in the cocaine business, means that the particular defendant understood the scope of his undertaking and should have foreseen everything that “Daddy” in fact did, then all of the co-defendants would receive the same sentences they received before their sentences were set aside by the Elev­enth Circuit. Obviously, much more than guesswork is required of the sentencing court under Ismond and Chitty, more than this court can deliver. With whatever mea­ger mental tools it has available, this court will now endeavor to explain the new sen­tences it has imposed on the defendants who remain in custody.

Reginald Greathouse

Inasmuch as Reginald Greathouse was, without doubt, the “Daddy” of this co­caine enterprise, and because the preponder­ance of the evidence shows clearly that at least 38.27 grams of crack and 96.44 grams of powder were possessed with intent to distrib­ute by one or more of the co-conspirators, all of the said drugs are attributable to Daddy. Under the Sentencing Guidelines, these amounts of cocaine must be converted to an equivalent amount of marijuana. They con­vert to a marijuana equivalency in excess of 700 kilograms. Therefore, the base offense level for Reginald Greathouse remains at 30, which was the base offense level in his origi­nal calculation. The 4-level upward adjust­ment resulting from this defendant’s role as the leader of the criminal activity remains unchanged, and therefore the sentence im­posed on April 20, 1992, and thereafter re­versed, should remain unchanged and has been reimposed.

Audra Greathouse

A preponderance of the evidence con­vinces the court that Audra Greathouse not only directly sold certain quantities of crack and powder but that she used her residence to store drugs for the conspiracy and served as the conspiracy’s bookkeeper. Her argu­ment that the ledger cannot be used as proof for attribution purposes because it contained no dates or specific amounts of drugs is not persuasive, although not entirely without merit. Nor was it necessary for the United States to convert the dollar amounts re­flected in the ledger to equivalent drug amounts. Further, this court finds that this defendant’s refusal to deal directly with the confidential informant does not insulate her from accountability as to the drugs pur­chased by the confidential informant from other conspirators. In short, the court be­lieves that the United States has shown by a preponderance of the evidence that Audra agreed to be the bookkeeper for the conspir­acy and to deal drugs directly on occasion. In combination, this evidence meets the Is-­mond requirement and calls for full attribu­tion. When a defendant had an agreement to sell and to store and was the bookkeeper, that evidence satisfactorily demonstrates that all drugs involved in the conspiracy were foreseeable by her and were within the scope of her undertaking. It was reasonable for her to believe that other family members *1563 would deal with the confidential informant even if she refused to do so.
Because the United States has proven by a preponderance that the conspiracy handled a marijuana equivalency in excess of 700 kilo­grams, Audra’s base offense level is 30. With the 3-level upward adjustment based on her substantial role in the offense, the adjusted offense level is 33. Therefore, the original sentence imposed on Audra Great-­house has remained unchanged.

Anthony Greathouse

At the sentencing hearing held on March 16, 1994, the United States conceded that the court should not consider the 2.96 grams of powder identified in the transaction conducted on June 8, 1991, which occurred prior to this defendant’s entry into the con­spiracy insofar as the proof is concerned. Anthony Greathouse admitted, however, and this court finds, that the United States has proven by a preponderance of the evidence that he sold 3.5 grams of crack on July 2, 1991, and the evidence, by a preponderance, supports the conclusion that this defendant sold at least 3.5 grams of crack. This does not require attributing the acts of others to Anthony. Therefore, the offense level for Anthony is 22.
The court agrees with Anthony’s ar­gument that a proper downward adjustment for his lesser involvement in the conspiracy calls for a reduction by three levels, applying the background commentary at U.S.S.G. § 3B1.2. Therefore, the adjusted offense level is 19, with the defendant’s criminal his­tory score remaining at V. The sentencing range becomes 57 to 71 months. In exercis­ing its discretion, the court has sentenced Anthony Greathouse to 57 months custody. In all other respects, the sentence as pro­nounced on April 20, 1992 (fines and super­vised released term), is unchanged.

Ronnie Greathouse

The totality of the taped conversa­tions involving Ronnie Greathouse proves that he agreed to participate in the conspira­cy and understood its scope in a general way. He regularly distributed drugs and allowed his residence to be used to store them. His involvement extended both to powder and crack. The court does not base its conclu­sion regarding the extent of this defendant’s involvement for the purposes of attribution on the fact that his wife had significantly greater responsibility in the conspiracy than he did, nor does the court believe that his mere proximity to the enterprise, or his last name, makes him culpable. Rather, the court finds what it can find "without speculat­ing, namely, that Ronnie agreed to partici­pate, and recorded conversations involving Ronnie prove by a preponderance of the evidence that he personally distributed at least 3 grams of crack. He also distributed some powder. The court deduces from this that Ronnie distributed at least 60 kilograms of marijuana equivalency, based on the con­versions required by the Guidelines, and that the offense level is 22.
The court agrees that this defendant’s lev­el of involvement justifies a 2-level down­ward adjustment pursuant to § 3B1.2(b). Therefore, the adjusted offense level is 20, and since this defendant’s criminal history category is II, the sentencing range becomes 37 to 46 months. Accordingly, Ronnie has been sentenced to serve 37 months in custo­dy, and his sentence in all other respects remains unchanged.

Victor Williams

Victor Williams presents the biggest problem for the court under the Ismond-­Chitty rationale. Victor admits to having sold 16 grams of powder to the Greathouse conspiracy but denies ever selling crack and insists that he expressly refused to deal in crack. The court agrees with defendant that the one pound of cocaine testified to by Betty Zeigler cannot be attributed to this defen­dant and agrees with this defendant’s charac­terization of the testimony of Betty Zeigler that she purchased that much cocaine for Reginald Greathouse (“Daddy”) from a vari­ety of suppliers, who may or may not have included this defendant. From the fact, if it be a fact, that Victor refused to sell or deal in crack, it does not follow that he was unaware of the fact that the conspiracy dealt in crack. Assuming that Victor never touched crack and only sold powder, he could surely antici­pate and foresee that the 16 grams of powder *1564 that he sold to the conspiracy might be con­verted to crack, and by a preponderance of the evidence the court finds that it was, in fact, converted to 13.19 grams of crack. His personal reluctance to cook the powder into crack does not insulate him from culpability for the conversion because it was both within the scope of his overall agreement and was reasonably foreseeable by him that the pow­der would be thus converted. Victor im­presses the court as quite an intelligent man. He was probably aware of the enhanced criminal exposure where dealing in crack is concerned. Even if he had said on the tele­phone, “Now, don’t cook this into crack be­cause I want no part of that,” he could still foresee that such a command would go un­heeded by this crowd.
Based on these findings, the court con­cludes that Victor’s offense level should be 26, and with a criminal history of I, the sentencing range becomes 63 to 78 months. Accordingly, Victor Williams has been resen-­tenced to 63 months in custody, and, as with all other defendants who appeared before the court for resentencing, the original sentence imposed regarding supervised release and fines remains unchanged.
⅜ ⅜ ⅜ ‡ ⅜ #
The judgments entered on April 20, 1992, will, by separate orders, be amended in ac­cordance with the above findings and conclu­sions.