**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-10846

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

CASSANDRA HARRIS PARKER,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 3:24-cr-00123-TES-SMD-7

_____

Before NEWSOM, BRANCH, and BRASHER, Circuit Judges.

PER CURIAM:

Cassandra Parker appeals her sentence of 37 months' imprisonment imposed after she entered an open plea of guilty to conspiracy to commit federal program theft and theft concerning

programs receiving federal funds.  She argues that the district court erred in applying several sentencing guidelines offense-level increases, including (1) a ten-level loss amount enhancement under U.S.S.G.  § 2B1.1(b)(1),  (2) a  four-level  leader  or  organizer enhancement under U.S.S.G. § 3B1.1(a), and (3) a two-level abuse of trust enhancement under U.S.S.G. § 3B1.3.  Additionally, for the first time on appeal, she argues that the district court plainly erred in applying a two-level increase under both U.S.S.G. § 2B1.1(b)(9)(A) and § 3B1.3 based on the same conduct.  After review, we affirm the enhancements related to the loss amount and Parker's leadership role.  However, we agree that Parker was ineligible for the U.S.S.G. § 3B1.3 enhancement because the U.S.S.G. § 2B1.1(b)(9)(A) enhancement was based on the same conduct.  Because this error affected the guidelines range, we vacate the sentence and remand for resentencing.

## I.      Background

A grand jury indicted Parker and several co-conspirators with conspiracy to commit federal program theft, in violation of 18 U.S.C. § 371 (Count One), and theft concerning programs receiving federal funds, in violation of 18 U.S.C. § 666(a)(1) (Count Five).  She entered an open guilty plea to both counts before a magistrate judge.  As part of her plea colloquy, Parker admitted that, between 2016 and 2020, she conspired with others to embezzle, steal, or otherwise fraudulently obtain more than $5,000 from her employer Tuskegee University, and that Tuskegee University received more than $10,000 in federal funding per year.  Specifically, Parker knowingly created fraudulent purchase orders

showing money owed to her co-conspirators and then used those purchase orders to generate legitimate checks for her co-conspirators. The co-conspirators would then cash the checks, and they would split the money with Parker and other co-conspirators. As part of this conspiracy, she also recruited at least four people to participate. Additionally, she admitted that the individuals who recruited her had their own separate check-cashing scheme, but that she was unaware of these schemes when she was recruited in 2016, and she did not share in the proceeds from those separate schemes. She admitted that she knew the purpose of the scheme and that it was illegal. The magistrate judge recommended that the district court accept Parker's plea, and the district court adopted the recommendation.

Prior to sentencing, the United States Probation Office prepared a presentence investigation report ("PSI"). According to the PSI, the fraud scheme began in 2007 or 2008 when co-conspirators and fellow Tuskegee employees Wanda Hairston and Cynthia Kitt started submitting fraudulent travel reimbursements for Morris Welch (Hairston's boyfriend), who was neither a student nor an employee of Tuskegee. At a later, unspecified date, Parker, who was the purchasing manager at Tuskegee, "came forward wishing to participate in the scheme." Parker recruited Lanequia Cooper, Ledaryl Johnson, Abraham Wright, and Keyonn Cannon, who were friends of her son, into the

conspiracy.[1]   Additionally, Hairston's sister, Phyllis Tyner, was involved in the conspiracy.   None of them had any ties to Tuskegee, nor were they entitled to any payments.   Cooper received a total of $27,150, Wright received $40,700, Johnson received $39,000, Cannon received $34,700, and Tyner received $58,165.58.   To execute the scheme, Kitt and Parker created the purchase orders and sent them to the accounts payable department.   When the checks were ready, Hairston or Kitt notified Parker, and Parker retrieved the checks and delivered them to her co-conspirators to be cashed.   Parker explained that the person who cashed the check received $300 and Parker received the rest of the money, which she typically then split with Kitt and Hairston.[2]   As part of the scheme, they also occasionally forged signatures on documents.   In total, Tuskegee lost $394,115.38.

The probation office determined that the loss amount attributable to Parker was $239,281.40, "based on the loss amounts for the individuals recruited by Parker, and the checks cashed by Welch and Tyner that Parker assisted with obtaining by joining the conspiracy in 2016."   Based on this loss amount, Parker received a

---

[1] Two other Tuskegee employees stated that Parker propositioned them to join the conspiracy, but they did not do so.

[2] Other check cashers in the conspiracy reported receiving either $300, $400, $500, or $800 for each check cashed.  Meanwhile,  Janet Moss-Smith, the Title III Grants Director at Tuskegee, "stated that she was paid $2,000 to $3,000 for signing the paperwork that allowed the fraudulent checks to be issued."

ten-level guidelines enhancement under U.S.S.G. § 2B1.1(b)(1)(F).[3] Parker also received a four-level increase for being an organizer or leader of a conspiracy that involved five or more people under U.S.S.G. § 3B1.1(a). Finally, she received a two-level increase under U.S.S.G. § 2B1.1(b)(9)(A) "[b]ecause the offense involved a misrepresentation that [she] was acting on behalf of an educational organization," and another two-level increase under U.S.S.G. § 3B1.3 for abusing a position of public or private trust. Her total adjusted offense level of 21 and her criminal history category of I resulted in an advisory guidelines range of 37 to 46 months' imprisonment.

Parker raised several objections to the PSI. First, she objected to the loss amount attributed to her and the related ten-level enhancement, arguing that she should not be held responsible for the amounts received by Welch and Tyner because she did not know they were involved in the conspiracy, and she did not share in the proceeds with them. Parker maintained that she should be responsible only for the monies received by the individuals she recruited, which would have resulted in a lower eight-level enhancement. Second, she objected to the four-level organizer or leader enhancement, arguing that she was not the organizer or leader and that she knew nothing about the check cashing scheme that Hairston ran with Welch and Tyner. Third, she objected to

---

[3] Section 2B1.1(b)(1)(F) provides that the offense level is increased by ten levels if the loss exceeded $150,000 but was less than $250,000. U.S.S.G. § 2B1.1(b)(1)(F).

the two-level increase based on the offense involving a misrepresentation that she was acting on behalf of Tuskegee. She maintained that "none of the factual statements in the [c]ommentary for [that] section applie[d] to [her]."

Parker submitted a sentencing memorandum in which she asserted that she was due for a downward variance to a sentence of probation or home confinement because she was not the mastermind of the conspiracy. Parker argued that Kitt and Hairston were the true leaders of the scheme, as they participated in it for nearly a decade before Parker became involved. Additionally, she contended that Kitt and Hairston recruited Welch and Tyner into the scheme and that she had no idea who they were, and she did not assist in procuring the checks cashed by Welch and Tyner. She further emphasized that she had cooperated with authorities and had accepted full responsibility for her actions. Next, she reiterated her objections to the PSI. Finally, she argued that the 18 U.S.C. § 3553(a) sentencing factors supported a downward variance.[4] The government opposed her request and argued for a 39-month sentence.

At the sentencing hearing, Parker reiterated her objection that the loss amount attributed to her accounted for two co-conspirators (Welch and Tyner) whom she did not know and who had been recruited by and worked solely with Kitt and Hairston. Accordingly, she maintained that she should not be held

---

[4] Parker submitted letters of support from friends and family that attested to her good character and her remorse.

responsible for the monies Welch and Tyner received and that she should have received the lesser eight-level enhancement under U.S.S.G. § 2B1.1(b)(1)(E).[5]   The government maintained that Parker was liable for "the full amount of the conspiracy from the moment that she joined" and that it was reasonably foreseeable that there were potentially other unknown individuals involved in the scheme because the scheme had been going on for almost a decade when she joined it.  The district court agreed with the government and overruled her objection.

As for the leader or organizer enhancement, Parker argued that she was not a leader or organizer of the whole conspiracy, emphasizing that she "supervised" only the four individuals she recruited and that the conspiracy had been going on for more than a decade by the time Parker joined.  She argued that she should instead qualify for the lesser three-point "manager/supervisor" enhancement under U.S.S.G. § 3B1.1(a).  The government argued that Parker was a leader or organizer because "she more than doubled the size of the conspiracy" by recruiting four people and actively "manag[ing] the activities of those individuals."   The district court overruled Parker's objection.

Next, Parker argued that the two-level increase under U.S.S.G. § 2B1.1(b)(9)(A) for misrepresentation was inappropriate because she did not act on behalf of the university while engaging

---

[5] Section 2B1.1(b)(1)(E) provides for an eight-level increase to the offense level if the loss is more than $95,000 but less than $150,000.   U.S.S.G. § 2B1.1(b)(1)(E).

in the conspiracy.  Rather, Parker argued that the commentary to the guideline demonstrated that the enhancement was appropriate only when a person holds themselves out as working for or on behalf of an educational institution to obtain a benefit on behalf of the institution but then diverts all or part of that benefit.  The district court overruled the objection, concluding that the examples in the commentary to the guideline were "non[-]exhaustive" and that the enhancement was appropriate because Parker "absolutely took advantage of the fact that she was an education institution employee."

Finally, Parker argued that she did not qualify for an abuse of trust enhancement under U.S.S.G. § 3B1.3 because "[s]he did not use any specialized skill in what she was doing."  Rather, Parker simply requested checks and was directed by Kitt and Hairston as to the amount and where to draw the checks from.  The government, in turn, noted that Parker had not raised an objection to this enhancement in her objections to the PSI, and, therefore, it was arguably waived.  Regardless, the government argued that Parker qualified for the enhancement because she used her position with the university to sign paperwork and falsify documents and her position was "integral" to "the continued fraud."  The district court overruled Parker's objection on the merits, concluding that she had abused her position with the university.

Accordingly, the district court determined that the advisory guidelines range was 37 to 46 months' imprisonment consistent with the PSI calculations.  After hearing arguments as to the

appropriate sentence and testimony from Parker's character witnesses and considering the 18 U.S.C. § 3553(a) factors, the district court imposed a total sentence of 37 months' imprisonment to be followed by three years of supervised release. This appeal followed.

## II.    Standard of Review

Generally, "[w]e review the interpretation and application of the Sentencing Guidelines *de novo*, and we review underlying findings of fact for clear error." *United States v. Jackson*, 997 F.3d 1138, 1140 (11th Cir. 2021). "For a factual finding to be clearly erroneous, this court, after reviewing all of the evidence, must be left with a definite and firm conviction that a mistake has been committed." *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1137 (11th Cir. 2004) (quotations omitted). "A factual finding cannot be clearly erroneous when the factfinder [chooses] between two permissible views of evidence." *United States v. Wilson*, 788 F.3d 1298, 1317 (11th Cir. 2015). The government bears the burden of proving the application of the guideline enhancements by a preponderance of the evidence. *See United States v. Victor*, 719 F.3d 1288, 1290 (11th Cir. 2013).

Where the defendant failed to raise the specific objection to his sentence in the district court that he now raises on appeal, we review the claim for plain error only. *United States v. Ramirez-Flores*, 743 F.3d 816, 821 (11th Cir. 2014).

### III.    Discussion

Parker argues that her sentence is procedurally unreasonable because the district court erred in applying (1) the ten-level loss amount enhancement under U.S.S.G. § 2B1.1(b)(1); (2) the four-level leader or organizer enhancement under U.S.S.G. § 3B1.1(a); and (3) the two-level abuse of trust enhancement under U.S.S.G. § 3B1.3.    Additionally, she argues for the first time on appeal that the district court plainly erred in imposing a guidelines level increase under both U.S.S.G. §§ 2B1.1(b)(9)(A) and 3B1.3 based on the same conduct.    We address each argument in turn.

#### A.    The loss amount enhancement under U.S.S.G. § 2B1.1

Parker argues that she should have been held responsible only for the monies received by the four people that she recruited and that she should not have been held responsible for the monies attributed to Welch and Tyner because she had no knowledge of, or connection to, those individuals or their activities.    And because she had no knowledge of or connection to Welch and Tyner, she maintains that their actions were not reasonably foreseeable.    Accordingly, she asserts that she should have qualified for the lesser eight-level loss amount increase as opposed to the ten-level increase.

We review the district court's determination regarding the loss amount for clear error.    *United States v. Cavallo*, 790 F.3d 1202, 1232 (11th Cir. 2015).    "The Sentencing Guidelines do not require a precise determination of loss.    Instead, a sentencing court need only make a reasonable estimate of the loss, given the available

information." *Id.* (alteration adopted) (quotations and citation omitted).

The Sentencing Guidelines for fraud and theft offenses provide that if the district court finds that the loss amount exceeds $150,000 but is less than $250,000, the offense level must be increased by 10 levels. U.S.S.G. § 2B1.1(b)(1)(F). If the amount of loss exceeds $95,000 but is less than $150,000, the offense level should be increased by 8. *Id.* § 2B1.1(b)(1)(E).

When calculating the guidelines range, the district court must consider all relevant conduct. *United States v. Siegelman*, 786 F.3d 1322, 1332 (11th Cir. 2015). Where a case involves jointly undertaken criminal activity, relevant conduct includes "all acts and omissions of others that were (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). "Thus, the district court may hold participants in a conspiracy responsible for the losses resulting from the reasonably foreseeable acts of co-conspirators in furtherance of the conspiracy." *United States v. Hunter*, 323 F.3d 1314, 1319 (11th Cir. 2003).

Here, the district court did not clearly err in determining the loss amount and imposing the ten-level increase. The evidence showed that Parker was a key member of the conspiracy and actively involved in recruiting four check cashers and in issuing the necessary documentation for the checks. *See United States v. Wheeler*, 16 F.4th 805, 830 (11th Cir. 2021) ("[A] defendant is liable

for the total loss amount of the conspiracy when she is actively involved in furthering the conspiracy's overall objective."). Although she may not have recruited or otherwise been aware of Welch and Tyner, she knew that the conspiracy had been ongoing for almost a decade when she joined, which necessarily meant that it was reasonably foreseeable that there were other check cashers involved in the conspiracy who continued to be involved after Parker joined. Thus, the acts of Welch and Tyner were reasonably foreseeable even if Parker did not know who they were or that they were involved, and the district court properly held her liable for the loss amounts attributed to them.[6] *See Hunter*, 323 F.3d at 1319; *Wheeler*, 16 F.4th at 830.

---

[6] Parker argues that her role is similar to that of the defendant in *United States v. Chitty*, 15 F.3d 159 (11th Cir. 1994), such that she should not be held liable for the acts committed by Welch and Tyner. Her argument is unpersuasive. We held that the defendant in *Chitty* was not responsible for additional shipments in a drug conspiracy because he had isolated, minimal involvement in a single marijuana shipment and there was no evidence that he knew of the conspiracy's past operations or had any knowledge of how the conspiracy operated or of any later shipments. *Id.* at 162. Nor was he involved in or otherwise connected to any later drug shipments. *Id.* Parker's role bears no resemblance to that of Chitty. Parker played an active role in the fraud conspiracy, was integral to its success, and had knowledge of both past and present operations. The simple fact that she may not have known of the identities of everyone involved does not minimize her role.

### B.  Leader or organizer enhancement under U.S.S.G. § 3B1.1(a)

Parker argues that the district court erred in determining that she held a leader or organizer role in the conspiracy and applying a four-level increase under U.S.S.G. § 3B1.1(a).  She maintains that Hairston and Kitt were the true leaders and organizers and that she should have received the lesser three-point enhancement as a manager or supervisor under § 3B1.1(b).

"A defendant's role as an organizer or leader is a factual finding that we review for clear error . . . ."  *United States v. Ramirez*, 426 F.3d 1344, 1355 (11th Cir. 2005).  Section 3B1.1 prescribes a four-level enhancement "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants," or a three-level enhancement "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive."  U.S.S.G. § 3B1.1(a), (b).  To qualify for the enhancement, "the defendant need only have been 'the organizer, leader, manager, or supervisor of one or more other participants.'"  *United States v. Shabazz*, 887 F.3d 1204, 1222 (11th Cir. 2018) (quoting U.S.S.G. § 3B1.1 cmt. (n.2)).[7]  We determine whether a

---

[7] In *United States v. Dupree*, we held that courts "may not defer" to the commentary to the Sentencing Guidelines "if uncertainty does not exist" in the guideline itself.  57 F.4th 1269, 1275 (11th Cir. 2023) (*en banc*) (quotation omitted).  However, here, both parties rely on the commentary and do not dispute its validity.  Thus, we will rely upon it as well in determining whether the district court properly applied the various enhancements.  *See United States*

defendant was an organizer or leader by considering the following several factors:

> (1) the exercise of decision making authority, (2) the nature of participation in the commission of the offense, (3) the recruitment of accomplices, (4) the claimed right to a larger share of the fruits of the crime, (5) the degree of participation in planning or organizing the offense, (6) the nature and scope of the illegal activity, and (7) the degree of control and authority exercised over others.

*Id.* (quotations omitted). Importantly, these factors are just offered for the court's consideration, and "[t]here is no requirement that all of the considerations have to be present in any one case." *United States v. Caraballo*, 595 F.3d 1214, 1231 (11th Cir. 2010) (quotations omitted). "In many of the cases where we have affirmed a finding that a defendant played a leadership or organizational role under U.S.S.G. § 3B1.1(a), there was evidence that the defendant had recruited participants, had instructed participants, or had wielded decision-making authority." *Id.* (collecting cases).

Here, the district court did not clearly err in determining that Parker was a leader or organizer of the conspiracy. The evidence established that the overall conspiracy involved more than five people and that Parker recruited four cash checkers into the conspiracy. Furthermore, the evidence established that Parker

---

*v. Jews*, 74 F.4th 1325, 1327 & n.2, 1328 (11th Cir. 2023) (relying on the commentary to a guideline where "[n]o party contest[ed] the commentary's validity . . . or the propriety of its interpretation of [the guideline's] text").

directed and supervised the actions of the four people she recruited and collected the money from them after they cashed the checks. Although Parker argues that there was no evidence that she "shared in the proceeds to a greater extent than other individuals," the evidence established that she received a much larger portion of the proceeds than the check cashers did, which further demonstrates her leadership role in the conspiracy. Indeed, Parker split the proceeds from the checks cashed by her recruits equally with the individuals who she claimed led the conspiracy, Hairston and Kitt, which also tends to demonstrate that Parker had a leadership role in the conspiracy. Thus, several of the factors that indicate a leadership or organizer role were present in this case, and the district court did not err in its determination. *See Shabazz*, 887 F.3d at 1222; *Caraballo*, 595 F.3d at 1231.

C. *Application of both the abuse-of-trust enhancement under U.S.S.G. § 3B1.3 and the misrepresentation enhancement under U.S.S.G. § 2B1.1(b)(9)(A)*

For the first time of appeal, Parker argues that the district court plainly erred in applying a two-level enhancement for abuse-of-trust under § 3B1.3 and misrepresentation under U.S.S.G. § 2B1.1(b)(9)(A) because the commentary to § 2B1.1 specifies that if the enhancements are based on the same conduct then a defendant is ineligible to receive enhancements under both provisions.[8]

---

[8] Relatedly, Parker also argues the district court erred in applying the abuse-of-trust enhancement under U.S.S.G. § 3B1.3. However, we need not address

To establish plain error, Parker must show that "(1) an error occurred; (2) the error was plain; (3) it affected [her] substantial rights; and (4) it seriously affected the fairness of the judicial proceedings." *Ramirez-Flores*, 743 F.3d at 822. To show that a sentencing error affected her substantial rights, she must "show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016) (quotations omitted). Generally, a "court's reliance on an incorrect [sentencing] range in most instances will suffice to show an effect on the defendant's substantial rights." *Id.* at 201. If a defendant satisfies the first three prongs of the plain error test, we may exercise our discretion to correct the error "if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 736 (1993) (alteration adopted) (quotations omitted). A plan error in the calculation of the guidelines that affects a defendant's substantial rights will generally satisfy this fourth prong. *Rosales-Mireles v. United States*, 585 U.S. 129, 139–42 (2018).

---

this issue because, even assuming arguendo that she qualified for the enhancement, as we explain further in this opinion, the guidelines provide that if the two-level increase for misrepresentation under U.S.S.G. § 2B1.1(b)(9)(A) is based on the same conduct as the conduct that forms the basis for an adjustment under § 3B1.3, then the § 3B1.3 enhancement should not apply. U.S.S.G. § 2B1.1, cmt. (n.8(E)(i)). Because we conclude that Parker's enhancements under § 2B1.1(b)(9)(A) and § 3B1.3 were based on the same conduct, it necessarily follows that § 3B1.3 should not have applied. *Id.*

Section 2B1.1(b)(9)(A) provides for a two-level enhancement for a defendant convicted of a theft or fraud offense "[i]f the offense involved[, in relevant part,] a misrepresentation that the defendant was acting on behalf of a charitable, educational, religious, or political organization, or a government agency." U.S.S.G. § 2B1.1(b)(9)(A). The commentary to § 2B1.1, however, states that "[i]f the conduct that forms the basis for an enhancement under subsection (b)(9)(A) is the only conduct that forms the basis for an adjustment under § 3B1.3 (Abuse of Position of Trust or Use of Special Skill) do not apply that adjustment under § 3B1.3." *Id.* § 2B1.1, cmt. (n.8(E)(i)).

Here, Parker's PSI indicated that the abuse-of-trust enhancement under § 3B1.3 applied because "Parker used her position as the Purchasing Manager at Tuskegee University to commit this offense." As for the misrepresentation enhancement under § 2B1.1(b)(9)(A), the PSI indicated that it applied "[b]ecause the offense involved a misrepresentation that the defendant was acting on behalf of an educational organization." Thus, the PSI indicated that both enhancements were based on the same conduct. Moreover, there is no indication from the sentencing hearing that the district court found that the two enhancements were supported by different conduct. Thus, the district court's application of both enhancements based on the same conduct constituted plain error. *See* U.S.S.G. § 2B1.1, cmt. (n.8(E)(i)).

This error affected Parker's substantial rights. If she had not received a two-level enhancement under § 3B1.1, her total offense

level would have been 19, which would have resulted in an advisory guidelines range of 30 to 37 months' imprisonment instead of 37 to 46 months' imprisonment. *See* U.S.S.G., ch. 5, pt. A (Sentencing Table). There is no indication in the record that the district court would have imposed the same sentence under a different guidelines range. Thus, Parker has shown that the error affected both her substantial rights and the fairness and integrity of the judicial proceeding. *Molina-Martinez*, 578 U.S. at 201; *Rosales-Mireles*, 585 U.S. at 139–42. Accordingly, we vacate the sentence, and we remand for resentencing.

## IV.    Conclusion

For the above reasons, we affirm the district court's application of the loss amount and leadership enhancements under the sentencing guidelines. However, because the U.S.S.G. § 3B1.3 abuse-of-trust enhancement and the U.S.S.G. § 2B1.1(b)(9)(A) misrepresentation enhancement were based on the same conduct, the district court should not have applied the § 3B1.3 enhancement. Accordingly, we vacate the sentence and remand for resentencing consistent with this opinion.

**AFFIRMED IN PART. VACATED AND REMANDED FOR RESENTENCING.**