108 F.3d 1380
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Douglas W. SCOTT and Richard E. Scott, Defendants-Appellants.
 Nos. 95-2078, 95-2097.
 United States Court of Appeals, Seventh Circuit.
 Submitted March 18, 1997.*
Decided March 19, 1997.
Rehearing and Suggestion for Rehearing En Banc Denied July 1, 1997.
 
 Before FLAUM, MANION and EVANS, Circuit Judges.
 
 ORDER
 
 1
 Richard E. Scott was convicted of racketeering and racketeering conspiracy in violation of 18 U.S.C. § 1962(c) and (d), 44 counts of mail fraud in violation of 18 U.S.C. § 1341, and making a false statement and misrepresentation of material fact to the United States Securities and Exchange Commission (SEC) on SEC Form D in violation of 18 U.S.C. § 1001. Richard was sentenced to five years' imprisonment on each count of racketeering and racketeering conspiracy, and one year on each of the counts of mail fraud and making a false statement, all to be served concurrently. Douglas Scott was convicted of all the same counts as his brother, except for the false statement to the SEC, and received a sentence of three years' imprisonment on each of the racketeering and racketeering conspiracy charges, and one year each on the 44 counts of mail fraud, all to be served concurrently. Both Scotts also received six years of probation, and were each ordered to pay restitution in the amount of $4,270,620. They each appeal their convictions and elected to proceed pro se. We affirm.
 
 
 2
 The Scotts were convicted based upon numerous fraudulent activities that they engaged in between 1983 and 1985, in relation to the operation of five of their many limited partnerships.[1] For example, the Scotts spent a significant sum of partnership money for purposes unrelated to the partnerships, such as paying off personal debt. Some individuals received partnership shares at reduced rates or without paying any cash investment as required by the Confidential Offering Memoranda (COM's), in exchange for relieving the Scotts of personal debts owed to them. Later, the Scotts began to insert a "borrowing provision" at the end of some of the limited partnerships' COM's allowing them to borrow money from the partnership at no interest or ten percent per annum. Further, the Scotts repeatedly purchased property privately and then sold it to one of the partnerships a few weeks later for a significant profit. The Scotts also failed to pay both the rents due and the required monthly payments for the TGS-84 partnership. Finally, the Scotts fraudulently obtained and used letters of credit. Investors were not informed of any of these practices.
 
 Sufficiency of the Evidence
 
 3
 The Scotts assert that there was insufficient evidence for them to be convicted of all counts. In bringing a sufficiency of the evidence challenge, the Scotts face a "nearly insurmountable hurdle." United States v. Hickok, 77 F.3d 992, 1002 (7th Cir.) (quoting United States v. Teague, 956 F.2d 1427, 1433 (7th Cir.1992)), cert. denied, 116 S.Ct. 1701 (1996). We "consider the evidence in the light most favorable to the Government, defer to the credibility determination of the jury, and overturn a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." Id. (citations and internal quotations omitted). In determining if there was sufficient evidence we resolve all conflicts in the evidence in favor of the prevailing party. Frazell v. Flanigan, 102 F.3d 877, 882 (7th Cir.1996); Emmel v. Coca-Cola Bottling Co. of Chicago, 95 F.3d 627, 629 (7th Cir.1996).
 
 
 4
 The Scotts' sufficiency argument for Counts One through Sixty-Nine[2] is based on their challenge to the credibility of the testimony of two government witnesses, Mr. Jonikas, an employee of the U.S. Attorney's Office, and Mr. Thullen, an accounting expert. The Scotts assert that these witnesses testified falsely. The jury apparently found the testimony of Jonikas and Thullen to be credible, even after they were cross-examined extensively concerning their allegedly false testimony. (See, e.g., Tr.Vol. 7 at 1027-28; Tr.Vol. 17 at 2799-2815, 2859-69, 2871-73). The Scotts invite us to "re-assess credibility and re-weigh the evidence...." Hickok, 77 F.3d at 1006. We decline this invitation, because "[i]t is not the task of this appellate court to reconsider the evidence or assess the credibility of the witnesses." United States v. Mojica, 984 F.2d 1426, 1435 (7th Cir.1993). We will not second-guess a jury on credibility issues. Therefore, as the Scotts' sufficiency argument relies on the credibility of these witnesses, we find that there was sufficient evidence to convict them on Counts One through Sixty-Nine.
 
 
 5
 Richard also challenges the sufficiency of the evidence for his conviction on Count Seventy, which charged him with knowingly and willfully making a false statement and misrepresentation of material fact on an SEC Form D for the TGS-84 Limited Real Estate Partnership.[3] (First Superseding Indictment, R. 5 at 110). Richard argues several different theories in an attempt to explain why we should find that there was insufficient evidence to affirm the conviction on Count Seventy, all of which fail. Richard first asserts that he never actually made the statement, which is similar to his unsuccessful argument at trial that his secretary was responsible, (Tr.Vol. 22 at 3367-68), however his signature appeared twice at the end of the form above a bolded statement that read "ATTENTION: Intentional misstatements or omissions of fact constitute Federal Criminal Violations (See 18 U.S.C. 1001)." (Appellants' App. at 198).
 
 
 6
 Richard also asserts that he listed $601,020 because it was the number used in the TGS-84's Confidential Offering Memorandum's Estimated Use of Proceeds chart, and he thought it was a reasonable interpretation of the "proposed to be used" language of the form. (Id. at 64-65). However, by the end of 1984, all but $1,200 of the approximate $700,000 in partnership funds had been used and the SEC Form D is dated March 4, 1985. (Tr.Vol. 6 at 934-35, 947 (discussing expenditures from accounts); Appellants' App. at 198 (showing date the form was signed as March 4, 1985)). Therefore, Richard would have known exactly how the money had been spent prior to filing the form with the SEC. Additionally, Richard's similarly false statements on three other SEC forms further demonstrate his intent to give incorrect information. (Tr.Vol. 18 at 2972-85).
 
 
 7
 Richard's last assertion is that his statement was an answer to an ambiguous question.[4] (Appellants' Br. at 63-64). Scott relies on United States v. Vesaas, 586 F.2d 101, 104 (8th Cir.1978), which states, "a prosecution for a false statement under § 1001 or under the perjury statutes cannot be based on an ambiguous question where the response may be literally and factually correct." Id. (emphasis in original). However, as already pointed out, Richard was aware of how the partnership money had been spent prior to submitting the form. Therefore, the question was not ambiguous and could only have been answered by stating how the money was used.
 
 
 8
 Once again, Richard's allegations call for us to draw inferences and reweigh evidence which we will not do. Hickok, 77 F.3d at 1006. Therefore, viewing the evidence in the light most favorable to the government, there was sufficient evidence for a jury to find guilt beyond a reasonable doubt for all counts.
 
 Actual Amendment of Indictment
 
 9
 The Scotts contend that their Fifth and Sixth Amendment rights were violated when the district court, prior to trial, granted the government's motion to strike paragraph 12[5] of Count Three from the indictment. The Fifth Amendment right referred to is the right to have an indictment by a grand jury and the Sixth Amendment right is for a person to be informed of the charges against them.
 
 
 10
 They assert that striking this single paragraph from a 74-paragraph count was an amendment which "broadened the indictment so as to present the trial jury with different offenses and less specific offenses." (Appellants' Br. at 56; see id. at 56-62). The Scotts complain that this bankruptcy scheme was incorporated into 68 of the other 69 counts by reference[6] and that the deletion of the paragraph resulted in an actual physical amendment of the indictment without resubmitting it to the grand jury in violation of their constitutional rights, which requires reversal per se. The Scotts assert that as a result of this deletion they were surprised and denied the use of defenses to the bankruptcy aspect which they had concentrated on preparing for two and a half years prior to their trial. (Reply Br. at 24). Although the Scotts' objection to the motion to strike paragraph 12 may not have preserved these specific grounds on appeal, the government has waived waiver by stating that they assume the Scotts did not forfeit this argument. United States v. Leichtnam, 948 F.2d 370, 375 (7th Cir.1991); (Appellee's Br. at 30).
 
 
 11
 In Leichtnam, we stated that it is a harmless narrowing of an indictment that does not detract from the right to a grand jury, when, as in this case, "a single count of an indictment charges more than one commission of the same offense (or more than one way of committing it), yet either the evidence, the instructions to the jury or both cover only one--or the indictment is physically amended to charge only one." Leichtnam, 948 F.2d at 375 (citing United States v. Miller, 471 U.S. 130, 140-45 (1985)). The Supreme Court has expressly rejected "the proposition that it constitutes an unconstitutional amendment to drop from an indictment those allegations that are unnecessary to an offense that is clearly contained within it...." Miller, 471 U.S. at 144.
 
 
 12
 To generalize ... a conviction will not ordinarily be upset because the proof at trial or the jury instructions cover fewer offenses than the indictment charged or only narrower or "lesser included" offenses--at least not without specific evidence that any departure from the strict terms of the indictment either surprised the defendant and prejudiced his or her defense or created a risk of double jeopardy.
 
 
 13
 Leichtnam, 948 F.2d at 377; see also United States v. Duff, 76 F.3d 122, 126 (7th Cir.) ("a prosecutor may elect to proceed on a subset of the allegations in the indictment, proving a conspiracy smaller than the one alleged"), cert. denied sub nom., Hill v. United States, 117 S.Ct. 148 (1996). We have consistently allowed an amendment to an indictment when it does not change an "essential" or "material" element of the charge and does not prejudice the defendant. United States v. Spaeni, 60 F.3d 313, 315 (7th Cir.), cert. denied, 116 S.Ct. 536 (1995). The Scotts were certainly aware that they were being charged with mail fraud and were therefore not prejudiced by the removal of a single paragraph relating to bankruptcy that was unnecessary to the offense of mail fraud. Therefore, the Scotts' constitutional rights were not violated nor were the offenses they were charged with broadened by the striking of the single paragraph that dealt with bankruptcy.
 
 Constructive Amendments of Indictment
 
 14
 The Scotts argue that the indictment was also constructively amended by the government and the court. (Appellants' Br. at 11-26). "A constructive amendment to an indictment occurs when either the government (usually during its presentation of evidence and/or its argument), the court (usually through its instructions to the jury), or both, broadens the possible bases for conviction beyond those presented by the grand jury." United States v. Floresca, 38 F.3d 706, 710 (4th Cir.1994).
 
 
 15
 The Scotts assert that the government constructively amended the indictment by its opening statement, evidence presented at trial, and closing argument. They complain that the government: submitted three additional SEC Form D's that all allegedly contained false statements, but were not identified in the indictment; presented as evidence 40 allegedly false statements in the COM's; and, stated in its closing that "any lie about any of those things to any investor and they're guilty," and "[a]llie [sic] is a false statement you know is false." (Tr.Vol. 28, at 4373, 4389; see Appellants' Br. at 22). The Scotts also assert that the court constructively amended the indictment by not specifically stating in its jury instructions that the false writing instruction for Richard referred solely to Count Seventy. The Scotts argue that because of this vague jury instruction and evidence presented by the government the jury could have convicted Richard on all counts in the indictment if they found that he made a single false statement. Additionally, they assert that this alleged broadening of the bases of conviction also affected Douglas under the requirements of the conspirator jury instruction.
 
 
 16
 The Scotts did not raise an objection to the jury instructions before the district court as required by Fed.R.Crim.P. 30.[7] An instruction that was not challenged at the trial court may be reviewed for plain error. United States v. Maloney, 71 F.3d 645, 663 (7th Cir.1995), cert. denied, 117 S.Ct. 295 (1996). However, the government asserts, based on United States v. Lakich, 23 F.3d 1203, 1207 (7th Cir.1994), that the Scotts waived this claim as opposed to merely forfeiting it, and are not even entitled to plain error review because they expressly "offered no objection" to the government's proposed jury instruction on a violation of 18 U.S.C. § 1001. (R. 138, Defendant's Objections to Proposed Jury Instructions at 5; Appellee's Br. at 31, 31 n. 7); see United States v. Olano, 507 U.S. 725, 733 (1993) (outlining the distinction between forfeiture and waiver); Maloney, 71 F.3d at 663.
 
 
 17
 "Some panels of the court ... relying upon the distinction between forfeiture and waiver outlined in United States v. Olano, 507 U.S. 725, 733 (1993), have held that the failure to object to an instruction constitutes a waiver of that objection and thus plain error review does not apply." Maloney, 71 F.3d at 663. However, these cases, "perhaps out of an abundance of caution, have nonetheless discussed the objection under the plain error standard." Id. Accordingly, we review the jury instruction for plain error.
 
 
 18
 We have the discretion to reverse for plain error only where the trial court's error is clear, prejudicial, and affects substantial rights. Olano, 507 U.S. at 732-35; Fed.R.Crim.P. 52(b). "Thus, even where the trial court has made an error, 'the Court of Appeals cannot correct the forfeited error unless the defendant shows that the error was prejudicial' and affected the outcome of the trial." United States v. Benitez, 92 F.3d 528, 533 (7th Cir.1996) (quoting Olano, 507 U.S. at 734). In other words, in order for us to reverse, "the amendment must constitute 'a mistake so serious that but for it the [defendant] probably would have been acquitted.' " United States v. Feinberg, 89 F.3d 333, 339 (7th Cir.1996) (quoting United States v. Remsza, 77 F.3d 1039, 1044 (7th Cir.1996)), cert. denied, 117 S.Ct. 997 (1997). We should not reverse, unless in our discretion, we find the plain error " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " Benitez, 92 F.3d at 533 (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)).
 
 
 19
 Count Seventy of the indictment refers only to making a false statement with respect to SEC Form D for the TGS-84 limited partnership, however, the government presented evidence of numerous other general false statements and three false statements in Form D's for other limited partnerships. The jury instructions did not specify which specific statement was referred to in the indictment. (R. 147, Jury Instructions; Appellants' App. at 67; Tr.Vol. 28 at 4420-21). Therefore, the jury instructions may at first appear to have unconstitutionally broadened the charges from those set forth in the indictment. See Leichtnam, 948 F.2d at 379-81 (reversing conviction where indictment mentioned use of one specific firearm and evidence of two other guns had been presented and the jury instructions merely referred to the use of "a firearm"). However, plain error did not occur in this case because not only was the redacted indictment attached to the jury instructions, but more importantly, the jury instructions stated: "You have heard evidence of acts of the defendants other than those charged in the indictment. You may consider this evidence only on the question of knowledge and intent. This evidence is to be considered by you only for this limited purpose." This limited purpose is clearly allowed under Fed.R.Evid. 404(b) and we have held that this use does not constitute a constructive amendment. Leichtnam, 948 F.2d at 379.
 
 
 20
 Moreover, contrary to the Scotts' contentions, the instruction on Count Seventy did not prejudice Richard with respect to the other counts, nor did it prejudice Douglas with respect to his convictions. The instructions are considered as a whole, not individually in a vacuum. United States v. Young, 997 F.2d 1204, 1208 (7th Cir.1993); United States v. Machi, 811 F.2d 991, 995 (7th Cir.1987). The jury instructions specifically state that separate from the mail fraud charges, Richard was charged with "making a false statement to the Securities and Exchange Commission." (R. 147, Jury Instructions; Appellants' App. at 80). Additionally, the jury instructions state that in order to find the defendant guilty on each of the mail fraud schemes "as described in the indictment," the jury must find that each proposition has been proven beyond a reasonable doubt. (R. 147, Jury Instructions; Appellants' App. at 72).
 
 
 21
 Similarly, the convictions of Douglas were not prejudiced by the instruction pertaining only to Richard because the jury was informed that separate consideration should be given to each defendant and that they should not consider evidence admitted solely against one defendant when considering the charges against the other. (R. 147, Jury Instructions; Appellants' App. at 87). The court also explicitly instructed the jury to disregard closing arguments when they are not supported by the evidence. (R. 147, Jury Instructions; Appellants' App. at 76).
 
 
 22
 The Scotts also assert that plain error was committed when the jury was improperly given a copy of the indictment that still contained paragraph 12 from Count Three, which had been stricken prior to trial.[8] (Appellants' Br. at 51-52; Appellants' Reply Br. at 16-17; R. 147, First Superseding Indictment at 23). However, the district court specifically instructed the jury that the indictment was not evidence and did not create any inference of guilt. (R. 147, Jury Instructions; Appellants' App. at 79; Tr.Vol. 28 at 4420-21). Further, the jury was properly instructed that in order to find guilt, the government must have proved "that the defendant knowingly devised and participated in the scheme to defraud as described in the indictment." (R. 147, Jury Instructions; Appellants' App. at 72; Tr.Vol. 28 at 4416).
 
 
 23
 Even assuming that the failure to redact the stricken bankruptcy paragraph was an error of constitutional dimension, it does not require reversal as the government has met its burden of proving that it was harmless error. United States v. Klein, 93 F.3d 698, 704-5 (10th Cir.), cert. denied, 117 S.Ct. 624 (1996); United States v. Edmond, 52 F.3d 1080, 1112-13 (D.C.Cir.), cert. denied, 116 S.Ct. 539 (1995). "A defendant is only entitled to a new trial if there is a reasonable possibility that the evidence had a prejudicial effect upon the jury's verdict." United States v. Berry, 92 F.3d 597, 600 (7th Cir.1996). Further, as already stated, the jury was informed that the indictment was not evidence. The well recognized means for demonstrating harmlessness is to show the existence of overwhelming evidence of the defendants' guilt, as was done in this case. Id. at 705. After objectively reviewing the record, even under the assumption that the submission of the indictment was constitutional error, we are satisfied beyond a reasonable doubt that it did not contribute to the verdict. Klein, 93 F.3d at 704; United States v. Utz, 886 F.2d 1148, 1151 (9th Cir.1989).
 
 Prosecutorial Misconduct
 
 24
 Lastly, the Scotts assert that the prosecutors engaged in numerous types of misconduct during the trial, depriving them of liberty without due process. (Appellants' Br. at 26-53). The Scotts first complain that the government failed to notify them of its intention to use Alvydas Jonikas as an expert witness during discovery and failed to meet the requirements of Fed.R.Crim.P. 16(a)(1)(E).[9]
 
 
 25
 Prior to the trial the government provided the Scotts with the charts that summarized the cash flow of the partnerships and informed them that Jonikas would be called as a witness in order to place all of the charts into evidence. (Tr.Vol. 5 at 767). The government did not identify Jonikas as an expert witness, nor has it conceded that Jonikas gave expert testimony. The district court treated Jonikas as an expert witness but allowed the testimony because it did not deprive the Scotts of a fair trial.
 
 
 26
 Douglas objected to Jonikas' testimony as an expert witness and is therefore entitled to have this issue reviewed for abuse of discretion. Richard, however, never raised this objection and only receives a review for plain error. The district court did not abuse its discretion, or commit plain error, in allowing Jonikas' testimony.
 
 
 27
 [Rule 16] does not mandate the suppression of evidence for a discovery violation. These sanctions are left to the discretion of the court, and we will not second guess its decision. A new trial would be warranted "only if the government violated Rule 16 and the remedy offered by the district court was inadequate to provide him with a fair trial."
 
 
 28
 United States v. Jackson, 51 F.3d 646, 652 (7th Cir.1995) (internal citations omitted) (quoting United States v. Mounts, 35 F.3d 1208, 1217 (7th Cir.1994)). Therefore, Jonikas was properly permitted to define several accounting terms and testify concerning the limited partnerships.
 
 
 29
 The Scotts also contend that the prosecutors conspired with Jonikas to present false testimony, engaged in fraudulent trial tactics, and presented the false testimony of Thullen at trial.
 
 
 30
 In order to receive a new trial on the basis of the government's use of allegedly perjured testimony, the defendant must establish that: (1) the prosecution's case included perjured testimony; (2) the prosecution knew, or should have known, of the perjury; and (3) there is a likelihood that the false testimony affected the judgment of the jury."
 
 
 31
 United States v. Saadeh, 61 F.3d 510, 523 (7th Cir.), cert. denied, 116 S.Ct. 521 (1995). The Scotts had an adequate opportunity to expose any alleged perjury on cross-examination. Id. Additionally, these are essentially claims that go to credibility and questions of inferences to be drawn from the evidence, which we have already discussed under the sufficiency of the evidence analysis. Therefore, the Scotts have failed to meet their burden of showing that false testimony had been presented.
 
 
 32
 The judge also cured any allegedly defective statements of law made by the government in its closing by informing the jury: "Members of the jury, you will be instructed on the law that pertains right after these closing arguments." (Tr.Vol. 28 at 4401). The court also informed the jury that the lawyers' statements were not evidence, the jury had a duty to follow the court's instructions on law, the jury must not question the rules of law stated by the court, and the jury's verdict must be based on the application of the law given by the court to the facts in this case. (R. 147, Jury Instructions; Appellants' App. at 73, 76; Tr.Vol. 28 at 4402-4).
 
 
 33
 The Scotts additionally assert that the prosecutors improperly gave their personal opinions by stating that the defendants had lied and had admitted guilt in their defense efforts. These alleged errors are reviewed for plain error because the Scotts did not object to these statements at trial. "The government's arguments were not improper. Where the character and credibility of the defendant[s] are at issue and the evidence allows the inference that the defendant has been less than truthful, the prosecutor does not err in closing argument by referring to the defendant as a liar." United States v. Catalfo, 64 F.3d 1070, 1080 (7th Cir.1995) (explaining that a prosecutor only goes too far if the "references to the defendants' veracity are intemperate and excessive"), cert. denied, 116 S.Ct. 1683 (1996). Additionally, the jury was informed that closing arguments were to be disregarded unless supported by the evidence.
 
 
 34
 The Scotts also present several claims of prosecutorial misconduct that are meritless on their face. For example, they contend that the prosecution's use of the term "judge" and "Judge Norgle" to refer to Judge Norgle created an implication of an impartial alliance. The Scotts also assert that the prosecution "struck foul blows" and behaved in an unprofessional manner by speaking in a loud manner and waiving papers during the cross-examination of Richard. The court instructed the prosecutor not to wave papers and several objections to the raising of his voice were sustained. The prosecutors did not engage in any misconduct.
 
 
 35
 Even if prosecutorial misconduct had occurred, reversal is not warranted. Reversal will not be ordered unless in considering the misconduct in the context of the entire record, we determine that its effect was to deny the defendant a fair trial. United States v. Lindemann, 85 F.3d 1232, 1244 (7th Cir.), cert. denied, 117 S.Ct. 392 (1996). The Scotts received a fair trial and we do not find any of their arguments for reversal persuasive.
 
 
 36
 For the foregoing reasons the judgment of the district court is AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 The five limited partnerships were Mortgage Fund VII, Group 54, Group 61, Wheaton Oaks, and Thanksgiving Day Special 1984 ("TGS-84"). The two enterprises that the Scotts were charged with using to facilitate their scheme were Elwyn, Willbert & Haig, Inc. ("EWH") and IRE Inc. (including IRE Inc.'s related companies: IRE Services, Inc.; Investors Real Estate; IRE Investments, Inc.; and IRE Properties) (collectively referred to as "IRE")
 
 
 [2]
 These counts include all of the charges except for the charge of making a false statement to the SEC
 
 
 [3]
 The stated objectives of TGS-84 were "to purchase a 5,000 square foot furnished office building at 1135 Wheaton Oaks Court in Wheaton, Illinois, and a 16.7% interest in Group P Partnership...." (COM, Appellants' App. at 31-32, 32; SEC Form D, Appellants' App. at 194). Richard Scott stated on the SEC form that $601,020 of proceeds from TGS-84 were used to purchase real estate. (Appellants' App. at 197; Tr.Vol. 17 at 2889-90). However, testimony was given by Jonikas illustrating that less than $400,000 was actually used to purchase the real estate. (Tr.Vol. 18 at 2964-72, 2972). Jonikas testified that government exhibit E-13, part of a bankruptcy filing for TGS-84, stated that on January 1, 1985, three months prior to filing Form D, the purchase price of the office property was given. Jonikas further testified that on the same page the cost of purchase for interest in the Group P Partnership was also given. (Tr.Vol. 18 at 2969)
 
 
 [4]
 The question states, "Indicate below the amount of the adjusted gross proceeds to the issuer (other than amounts specified in Item 5.b above ) proposed to be used or used for each of the purposes listed below. If the amount to be used for any purpose is not known, furnish an estimate and place an "X" in the box to the left of the amount given." (Appellants' App. at 197). The form stated that the amount for purchase of real estate was $601,020. (Id.). However, as an "X" was not placed in the box, this number could only be the amount used or amount proposed to be used. (Id.)
 
 
 [5]
 Paragraph 12 states:
 It was further a part of the scheme that in or about October, November, and December, 1985, in an attempt to maintain operating control of the partnerships and prevent the limited partners from having a receiver appointed to manage the partnerships in their stead, defendants RICHARD E. SCOTT and DOUGLAS W. SCOTT caused bankruptcy petitions to be filed under Chapter 11 for Group 54, Group 61, Wheaton Oaks, and TGS-84, as well as personal bankruptcy petitions and bankruptcy petitions for approximately 35 other limited partnerships and entities.
 (R. 5 at 23; Appellants' App. at 127).
 
 
 [6]
 Each of the mail fraud counts states that the grand jury, "realleges and incorporates by reference paragraphs One through Seventy-Three of Count Three of this indictment as though fully set forth herein." The Scotts argue that this amendment changed the single bankruptcy scheme to defraud into a series of schemes which did not include the bankruptcy aspect
 
 
 [7]
 Rule 30 provides in pertinent part that, "No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection."
 
 
 [8]
 The Scotts admit that they failed to object to the submission of the indictment to the jury. (Appellants' Reply Br. at 16)
 
 
 [9]
 Rule 16(a)(1)(E) states:
 At the defendant's request, the government shall disclose to the defendant a written summary of testimony the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case in chief at trial. This summary must describe the witnesses' opinions, the bases and the reasons therefor, and the witnesses' qualifications.